043465/19344/JNR/KLM

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| JACQUELINE FARRIS, | |
| Plaintiff, | |
| v. | |
| ERIK KOHLRUS, WARDEN CHRISTINE BRANNON, PREA COMPLIANCE MGR CLARA CHARRON, MENTAL HEALTH ADMIN NORINE ASHLEY, LISA JOHNSON, AGENCY PREA COORDINATOR PATRICK KEANE, AGENCY PREA COORDINATOR MIKE FUNK, FELIPE ZAVALA, ALAN PASLEY, JASMIN WOOLFOLK, CORRECTIONAL OFFICER MATTHEW MITCHEY, CORRECTIONAL OFFICER JAMES BARRY, CORRECTIONAL OFFICER WILLIAM LEMON, ALEX ADAMS, DECATUR LIEUTENANT SNYDER, CORRECTIONAL MAJOR JONES, CORRECTIONAL OFFICER LOCKE, A AHART, SEAN WHELTON, LAURA JACKSON, JOSE RIVERA, WILLIAM ROBERTS, JAMES DAVIS, ZACHARY SAPP, JENNIFER BILLINGTON, DILLION KEARNEY, JEFF GABOR, MARK DELIA, AMY RUDE AND ILLINOIS DEPARTMENT OF CORRECTIONS, | No. 17-cv-3279 Judge Sue E. Myerscough |
| Defendants. | |

## ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES

COMES NOW the defendant, Amy Rude, by her attorney, CASSIDAY SCHADE LLP, and pursuant to Rule 7(a)(2) of the Federal Rules of Civil Procedure, hereby answers the complaint, submits her affirmative defenses, and makes a jury demand.  In

support thereof, the following statements are made.

## Introduction

1.      On December 28, 2015, Plaintiff was raped by a correctional officer at Logan Correctional Center. Her rape occurred under the noses of several correctional staff who saw the sexual assault and did nothing. In fact, there is a widespread practice at Logan Correctional Center of failing to intervene to prevent sexual assaults and sexual harassment against prisoners at Logan, a practice which emboldened Plaintiff's rapist.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶1 of plaintiff's first amended complaint.

2.      Plaintiff reported to medical staff at the prison that she had been raped. But rather than take Plaintiff's complaint seriously, the investigators to whom the complaint was referred threatened Plaintiff and retaliated against her.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶2 of plaintiff's first amended complaint.

3.      Accordingly, Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**RESPONSE:**

Defendant, Amy Rude, denies liability, but admits this action is brought pursuant to 42 U.S.C. §1983.

## Jurisdiction and Venue

4.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and

1367.

**RESPONSE:**

 Defendant, Amy Rude, admits the allegations contained in ¶4 of the first amended complaint.

5.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief Defendants reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**RESPONSE:**

Defendant, Amy Rude, admits the allegations contained in ¶5 of the first amended complaint.

**Parties**

6.      In December of 2015, and at all times relevant to the events at issue in this case, Plaintiff Jacqueline FARRIS, was in the custody of the Illinois Department of Corrections (IDOC). She was incarcerated at Logan Correctional Center in December 2015, and then transferred to Decatur Correctional Center in January 2016. She currently remains in custody of IDOC and is housed at the Fox Valley Adult Transition Center.

**RESPONSE:**

Defendant, Amy Rude, admits the allegations contained in ¶6 of the first amended complaint.

7.      At all times relevant to her involvement in this case, Defendant CHRISTINE BRANNON was employed by the IDOC in the capacity of Warden of Logan Correctional Center. As such, Defendant BRANNON was acting under color of law. Defendant BRANNON is being sued in her individual capacity for the challenged conduct.

**RESPONSE:**

Defendant, Amy Rude, admits the allegations contained in ¶7 of the first amended complaint.

8.      At all times relevant to her involvement in this case, Defendant BRANNON was responsible for the organization and supervision of Logan Correctional Center. In that capacity, and at all times relevant to her involvement in this case, Defendant BRANNON promulgated rules, regulations, polices, and procedures as Warden of Logan Correctional Center to guarantee the reasonable safety of inmates at the facility. Defendant BRANNON'S rules, regulations, policies and procedures were implemented by and through the Correctional Officers and Internal Affairs Investigators at Logan Correctional Center.  As Warden, Defendant BRANNON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing staff on inmate violence, such as sexual assaults by guards and the adherence of each facility to the Prison Rape Elimination Act ("PREA").

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶8 of plaintiff's first amended complaint.

9.      Additionally, at all times relevant to the events at issue in this case, Defendant BRANNON was responsible for the hiring, supervision, training, and retention of Correctional Officers employed by the Illinois Department of Corrections and assigned to Logan Correctional Center, including Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶9 of plaintiff's first amended complaint.

10.     At all times relevant to her involvement in this case, Defendant CLARA CHARRON was employed by the IDOC in the capacity as the PREA Compliance Manager at Logan Correctional Center. As such, Defendant CHARRON was acting under color of law. Defendant CHARRON is being sued in her individual capacity for the challenged conduct.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶10 of plaintiff's first amended complaint.

11.     At all times relevant to her involvement in this case, and in the capacity of PREA Compliance Manager, Defendant CHARRON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant CHARRON promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶11 of plaintiff's first amended complaint.

12.     At all times relevant to her involvement in this case, Defendant NORINE ASHLEY was employed by the IDOC in the capacity as a Psychologist, Mental Health Administrator: PREA Compliance Manager. As such, Defendant ASHLEY was acting

under color of law. Defendant ASHLEY is being sued in her individual capacity for the challenged conduct.

**RESPONSE:**

Defendant, Amy Rude, admits Norine Ashley was employed by the Illinois Department of Corrections as a Psychologist, Mental Health Administrator. Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶12 of plaintiff's first amended complaint.

13.     At all times relevant to her involvement in this case, and in the capacity of a Psychologist, Mental Health Administrator: PREA Compliance Manager, Defendant ASHLEY was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant ASHLEY promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶13 of plaintiff's first amended complaint.

14.     At all times relevant to her involvement in this case, Defendant LISA JOHNSON was employed by the IDOC in the capacity as a Back-up to the PREA Compliance Manager. As such, Defendant JOHNSON was acting under color of law. Defendant JOHNSON is being sued in her individual capacity for the challenged conduct.

**RESPONSE:**

Defendant, Amy Rude, admits Lisa Johnson was employed by the Illinois Department of Corrections, but has insufficient knowledge to admit or

deny the remaining allegations contained in ¶14 of plaintiff's first amended complaint.

15.     At all times relevant to her involvement in this case, and in the capacity of Back-up to the PREA Compliance Manager, Defendant JOHNSON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant JOHNSON promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶15 of plaintiff's first amended complaint.

16.     At all times relevant to their involvement in this case, PATRICK KEANE and MIKE FUNK, as Agency PREA Coordinators, were responsible for, among other things, developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

**RESPONSE:**

Defendant, Amy Rude, admits Patrick Keane was a PREA Coordinator for the Illinois Department of Corrections, but has insufficient knowledge to admit or deny the remaining allegations contained in ¶16 of plaintiff's first amended complaint.

17.     At all times relevant to their involvement in this case, and in the capacity of Agency PREA Coordinators, Defendants KEANE and FUNK promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by

the facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶17 of plaintiff's first amended complaint.

18.     At all times relevant to their involvement in this case, FELIPE ZAVALA and ALLEN PASLEY, as Back-Up Agency PREA Coordinators, were responsible for, among other things, providing assistance to the Agency PREA Coordinators in developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶18 of plaintiff's first amended complaint.

19.     At all times relevant to their involvement in this case, and in the capacity of Back-Up Agency PREA Coordinators, Defendants ZAVALA and PASLEY promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶19 of plaintiff's first amended complaint.

20.     On or about December 28, 2015, and at all times relevant to their involvement in this case, Defendants Logan Correctional Center Case Investigator

JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA were employed by the IDOC and worked at Logan Correctional Center. As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities. Defendants Logan Correctional Center Case Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA were responsible for, among other things, ensuring the equitable enforcement of rules and regulations promulgated by the Warden during Internal Affairs investigations, including the rules and regulations aimed at investigating sexual assaults by guards and adherence by Logan Correctional Center to the PREA.

### RESPONSE:

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶20 of plaintiff's first amended complaint.

21.    On or about December 28, 2015, and at all times relevant to her involvement in this case, Defendant AMY RUDE, L.C.S.W. was employed at Logan Correctional Center in the position of a Social Worker. As such, Defendant RUDE was acting under color of law and within the scope of her employment and is sued in her individual capacity. Defendant RUDE was responsible for, among other things, ensuring effective and equitable mental health treatment and mental health classifications of inmates housed at Logan Correctional Center.

### RESPONSE:

Defendant, Amy Rude, admits she was acting under color of law and within the scope of her employment on December 28, 2015.  Defendant also admits that, at certain times relevant to the complaint, she was assigned to Logan Correctional Center, but denies she was a Social Worker.  Defendant admits she is responsible for the delivery of mental

health services to some inmates, but denies ¶21 of plaintiff's first amended complaint sets forth an accurate description of her duties. Defendant has insufficient knowledge to admit or deny to what extent or in what capacity plaintiff brings suit.

22.     On or about December 28, 2015, and at all times relevant to their involvement in this case, Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY were employed by the IDOC and worked at Logan Correctional Center. As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities.

**RESPONSE:**

Defendant, Amy Rude, admits Woolfolk was a Correctional Officer at Logan Correctional Center, but has insufficient knowledge to admit or deny the remaining allegations contained in ¶22 of plaintiff's first amended complaint.

23.     Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY were responsible for, among other things, ensuring the control and safety of all inmates housed at Logan Correctional Center, including Plaintiff.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶23 of plaintiff's first amended complaint.

24.     On or about May of 2016, Defendants SNYDER, LOCKE, and JONES were employed by the IDOC and worked at Decatur Correctional Center. As such, these Defendants were acting under color of law and within the scope of their employment

with IDOC and are sued in their individual capacities. Defendants SNYDER, LOCKE, and JONES were responsible for, among other things, discipline of inmates and internal affairs investigations at Decatur Correctional Center, including the discipline and investigation of disciplinary infractions alleged against Plaintiff.

**RESPONSE:**

Defendant, Amy Rude, admits Snyder and Locke were employed by the Illinois Department of Corrections at Decatur Correctional Center. Defendant has insufficient knowledge to admit or deny the allegations contained in ¶24 of plaintiff's first amended complaint.

25.   Defendant ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC) is the Illinois state agency responsible for the operation of various correctional facilities throughout the State of Illinois, including Logan Correctional Center and Fox Valley Adult Transition Center. Defendant IDOC is a governmental subdivision of the State of Illinois.

**RESPONSE:**

Defendant, Amy Rude, admits the allegations contained in ¶25 of plaintiff's first amended complaint.

### Factual Allegations

26.   Plaintiff entered Logan Correctional Center on December 4, 2015. She had been sentenced to 180 days in the Boot Camp facility (equating to 120 days with good time credits, less time already served). Her sentence included a provision that if she did not complete Boot Camp, she would face a six year incarceration. Plaintiff was intent on completing her sentence at Boot Camp in 120 days, without any delay, and returning home to her two young boys.

**RESPONSE:**

Defendant, Amy Rude, admits plaintiff entered Logan Correctional Center on December 4, 2015. Defendant denies plaintiff was sentenced to boot camp. Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶26 of plaintiff's first amended complaint.

27.     Once at Logan Correctional Center, and as part of being placed in "Boot Camp Status," Plaintiff was permitted to change out of the standard prison garb and wear sweatpants and a sweatshirt labeled "Boot Camp." She, along with other women being sent to Boot Camp, were housed in a unit separate from the general population and were expected to perform all tasks around the prison, such as serve food trays, clean the laundry, clean the units, and generally help out around the prison while waiting for availability at the Boot Camp to open. Because of their status, the inmates, including Plaintiff, were permitted to leave their cell doors unlocked at all times and come and go throughout the facility as needed, and at the direction of the correctional officers, to complete their tasks.

**RESPONSE:**

Defendant, Amy Rude, denies the allegations contained in ¶27 of plaintiff's first amended complaint.

28.     In and around December of 2015, Defendant KOHLRUS was employed as a Correctional Officer and was assigned to the third shift in Plaintiff's unit. Defendant KOHLRUS initiated contact with Plaintiff. While conducting cell checks, Defendant KOHLRUS would bang his flashlight against Plaintiff's cell door, and instruct Plaintiff to meet him at the cell door to talk. On at least one occasion, Defendant KOHLRUS instructed Plaintiff to undress so that he could watch.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the
allegations contained in ¶28 of plaintiff's first amended complaint.

29.     On one occasion, Defendant KOHLRUS explained to Plaintiff that
because he was being reassigned to a different area of the prison where they would not
see each other, he had a plan to meet her in the laundry room during his shift.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the
allegations contained in ¶29 of plaintiff's first amended complaint.

30.     Defendant KOHLRUS' plan to meet Plaintiff in the laundry room during his
shift necessitated the knowledge and agreement of Defendants Logan Correctional
Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON,
JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY who
were aware of his whereabouts in the prison during his shift and permitted his plan with
Plaintiff to unfold without interruption.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the
allegations contained in ¶30 of plaintiff's first amended complaint.

31.     Following Defendant KOHLRUS' directions, Plaintiff met with him in the
laundry room on December 28, 2015. When Defendant KOHLRUS made sexual
advances towards her, Plaintiff became scared and nervous. She ran back to her cell.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the
allegations contained in ¶31 of plaintiff's first amended complaint.

32.     Defendant KOHLRUS followed Plaintiff back to her cell. He told her, "I

have a plan" and "I want you to come back down," or words to that effect. Plaintiff complied.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶32 of plaintiff's first amended complaint.

33.    While back in the laundry room, Plaintiff could see Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY working in the "bubble" or control tower. At no point did any of these Defendants intervene and / or stop Defendant KOHLRUS' actions.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶33 of plaintiff's first amended complaint.

34.    Defendant KOHLRUS engaged Plaintiff in non-consensual sexual acts. Afterwards he said words to the effect of "good girl" and reminded Plaintiff that she would not go to boot camp if she told anyone.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶34 of plaintiff's first amended complaint.

35.    Plaintiff was unprepared for what had occurred in the laundry room. She confided in the nurse at Logan Correctional Center, and then later the Medical Director. Plaintiff consented to a rape kit.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶35 of plaintiff's first amended complaint.

36.     Plaintiff was then instructed to speak with Logan Correctional Center Case Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA, who yelled and threatened her that she was going to get hit with extra charges if the rape kit did not come back positive.  Scared, Plaintiff told the Defendants GABOR and DELIA that she had consented to Defendant KOHLRUS' actions.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶36 of plaintiff's first amended complaint.

37.     Based on her reporting, Plaintiff was then placed in isolation. At no point during her time in isolation was she afforded the opportunity to challenge her confinement.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶37 of plaintiff's first amended complaint.

38.     The isolation unit was intense. Plaintiff—although not suicidal—was confined to a cell alongside women who were placed on suicide watch. The women had obvious mental health problems and, with cells that you could see straight into, Plaintiff had no privacy from their experiences.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶38 of plaintiff's first amended complaint.

39.     Plaintiff did not forget that she was sentenced to Boot Camp, and remained focused on getting home to her children. She was persistent in asking when she would be let out of segregation, but received no information, and no paperwork, in

regards to her continued detention or the Internal Affairs Investigation into the rape.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶39 of plaintiff's first amended complaint.

40.    Plaintiff was offered anti-anxiety medication while in segregation. At first she refused, but the stress of the unit and the lack of information regarding her situation bore down on her. Eventually she capitulated and took the anti-anxiety medication.

**RESPONSE:**

Defendant, Amy Rude, admits that plaintiff took anxiety medication. Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶40 of plaintiff's first amended complaint.

41.    Once Plaintiff accepted the anti-anxiety medication, she was then informed by Defendants that she was no longer eligible for Boot Camp due to her mental health status.

**RESPONSE:**

Defendant, Amy Rude, denies the allegations contained in ¶41 of plaintiff's first amended complaint.

42.    Plaintiff was forced by Defendants GABOR and DELIA to sign a statement that she would not discuss the Internal Affairs Investigation relating to Defendant KOHLRUS' actions—despite not being provided with any information on the investigation, including whether the investigation concluded and what the findings were.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶42 of plaintiff's first amended complaint.

43.    Plaintiff was sent to Decatur Correctional Center on January 21, 2016. Plaintiff was disciplined at Decatur Correctional Center by Defendants SNYDER,

LOCKE, and JONES after alleging discussing the incident.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶43 of plaintiff's first amended complaint.

44.    Plaintiff left Decatur Correctional Center on July 12, 2017 and is currently

housed at Fox Valley Adult Transition Center.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶44 of plaintiff's first amended complaint.

**Count I**
**42 U.S.C. § 1983 – Excessive Force (Eighth Amendment)**
**Against Defendant KOHLRUS**

**RESPONSE:**

Count I is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count II**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**Against Defendant KOHLRUS**

**RESPONSE:**

Count II is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count III**
**42 U.S.C. § 1983 – Deliberate Indifference**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK,**
**ZAVALA, and PASLEY**

**RESPONSE:**

Count III is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count IV**
**42 U.S.C. § 1983 - Failure to Intervene**
**Against Defendants WOOLFOLK, MITCHEY, BARRY, LEMON, and ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY**

**RESPONSE:**

Count IV is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count V**
**42 U.S.C. § 1983 – Conspiracy**
**Against Defendants KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, and ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY**

**RESPONSE:**

Count VII is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count VI**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, RUDE, GABOR and DELIA**

72.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE:**

Defendant, Amy Rude repeats and realleges her responses to the first amended complaint as if fully restated herein.

73.     As stated more fully above, following the rape and Plaintiff's subsequent report, Plaintiff was placed in isolation and denied Boot Camp status. The conditions that Plaintiff experienced in isolation, including her eventual denial of Boot Camp status, were atypical and significantly imposed such a hardship on her that the risk of having to endure those conditions triggered a liberty interest requiring due process.

**RESPONSE:**

Defendant, Amy Rude, denies the conditions plaintiff experienced were atypical and significantly imposed such a hardship on her that the risk of having to endure those conditions triggered a liberty interest requiring due process.   Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶73 of the first amended complaint.

74.    Defendants failed to provide Plaintiff with due process before depriving her of that liberty interest. Specifically, Plaintiff had no hearing and no opportunity to dispute her continued confinement or denial from Boot Camp.

**RESPONSE:**

Defendant, Amy Rude, denies that she had any authority to provide plaintiff with a hearing; denies that plaintiff was entitled to a hearing to determine whether to be placed in boot camp; and denies that plaintiff was deprived of a liberty interest.   Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶74 of the first amended complaint.

75.    The misconduct committed by Defendants were not random and unauthorized, but instead were the foreseeable result of the policies and practices of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendants RUDE, GABOR and DELIA.

**RESPONSE:**

Defendant, Amy Rude, denies that she engaged in misconduct or that her actions were the foreseeable result of policies and practices set forth by the Illinois Department of Corrections or its employees.   Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶75 of the first amended complaint.

76.    Specifically, in December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, were responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Logan Correctional Center as they related to PREA

violations and staff-on-inmate violence, including the investigation and discipline of inmates who make such reports. In December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON knew or should have known of a widespread practice at Logan Correctional Center that limited inmates' due process rights who made reports of PREA violations and staff-on-inmate violence by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, internal affairs investigatory reports, meetings, and lawsuits.

**RESPONSE:**

Defendant, Amy Rude, has insufficient knowledge to admit or deny the allegations contained in ¶76 of the first amended complaint.

77.    The above-described widespread practice, so well-settled as to constitute a de facto policy of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON was able to exist and thrive through the Defendants RUDE, GABOR and DELIA because Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, who had authority over the same, exhibited deliberate indifference to the problem. Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON manifested deliberate indifference to these constitutional violations taken by the Defendants RUDE, GABOR and DELIA by failing to take reasonable measures to remedy these violations. Among other things, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON failed to adequately train, supervise, control, and discipline, including terminate, the Defendants RUDE, GABOR and DELIA who engaged, or were accused of engaging in, due process violations, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON directed, knew

about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's constitutional rights, and violated Plaintiffs rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

**RESPONSE:**

Defendant, Amy Rude, denies the allegations contained in ¶77 of the first amended complaint.

78.    As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE:**

Defendant, Amy Rude, denies the allegations contained in ¶78 of the first amended complaint.

**Count VII**
**42 U.S.C. § 1983 – Retaliation (First Amendment)**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, GABOR, DELIA, SNYDER, LOCKE, and JONES**

**RESPONSE:**

Count VII is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count VIII**
**42 U.S.C. § 12132—Americans with Disabilities Act Claim**
**Against Defendant IDOC**

**RESPONSE:**

Count VIII is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count IX**
**29 U.S.C. § 794(a)—Rehabilitation Act Claim**
**Against Defendant IDOC**

**RESPONSE:**

Count IX is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count X**
**Illinois State Law – Assault & Battery**
**Against Defendant KOHLRUS**

<u>**RESPONSE**</u>**:**

Count X is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count XI**
**Illinois State Law – Sexual Abuse**
**Against Defendant KOHLRUS**

<u>**RESPONSE**</u>**:**

Count XI is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**Count XII**
**Illinois State Law – Intentional Infliction of Emotional Distress**
**Against Defendant KOHLRUS**

<u>**RESPONSE**</u>**:**

Count XII is not directed at defendant, Amy Rude, and therefore she makes no response to this Count.

**DEFENDANT DEMANDS TRIAL BY JURY**

<u>**AFFIRMATIVE DEFENSES**</u>

1.    Defendant is protected from suit by the doctrine of qualified immunity.[1]  At all times relevant herein, defendant acted in good faith in the performance of her official duties and without violating plaintiff's clearly established statutory or constitutional rights

---

[1]Defendant acknowledges in *Estate of Clark v. Walker*, 865 F.3d 544, 550-51 (7th Cir. 2017), the Seventh Circuit rejected qualified immunity for contractual government employees.  To the extent any State defendants are entitled to qualified immunity because the law is not clearly established, defendant, Amy Rude, should be entitled to the same protection. Defendant asserts this defense to preserve it for appeal.

of which a reasonable person would have known.

2.      At all times relevant herein, defendant acted in good faith and in conformity with existing precedent.  She is, therefore, entitled to good faith immunity from damages.  *Wyatt v. Cole*, 504 U.S. 158, 169 (1992).

3.      To the extent plaintiff has failed to exhaust her administrative remedies prior to initiating bringing this action, her claims are barred by Section 1997e(a) of the Prison Litigation Reform Act.

4.      To the extent plaintiff's claims for relief accrued more than two years prior to initiation of this case, they are barred by the applicable statute of limitations.

5.      At all times relevant herein, defendant's duties were limited to those that were delegated to her by her employer and that her employer voluntarily undertook pursuant to its contract with the Illinois Department of Corrections.

**DEFENDANT DEMANDS TRIAL BY JURY AS TO HIS AFFIRMATIVE DEFENSES**

WHEREFORE, for the above reasons, defendant, Amy Rude, respectfully requests this honorable Court deny plaintiff any relief in this matter and grant defendant judgment as to all matters and any other relief deemed appropriate, including cost of suit.

Respectfully submitted,

AMY RUDE,
     Defendant,

CASSIDAY SCHADE LLP,
     Attorneys for Defendant,

By:   /s/ Karen L. McNaught

Karen L. McNaught, 6200662
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
kmcnaught@cassiday.com

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct and on March 19, 2018, I caused a copy of the foregoing Answer to Plaintiff's First Amended Complaint with Affirmative Defenses to be filed with the Clerk of the Court using the CM/ECF system, which sends a "Notice of E-Filing" to the following:

Julie Marie Goodwin, Esq.
Sarah C. Grady, Esq.
Loevy & Loevy
311 Aberdeen Street, 3rd Floor
Chicago, IL 60607
julie@loevy.com
sarah@loevy.com

Mary Kaitlyn Clark-Joseph
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
mkclarkjoseph@atg.state.il.us

Sara M. Vig, Esq.
Law Offices of Sara M. Mayo Vig
1100 South Fifth Street, Lower Level
Springfield, IL 62703
sara@vig-law.com

/s/ Karen L. McNaught

Karen L. McNaught, 6200662
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
kmcnaught@cassiday.com

8802846 KMCNAUGH;KMCNAUGH