**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| JACQUELINE FARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 17-3279-SEM-TSH |
| | ) | |
| ERIC KOHL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT

NOW COME Defendants, ALEX ADAMS, ADDISON AHART, NORINE ASHLEY, JOHN BALDWIN, JAMES BARRY, JENNIFER BILLINGTON, CHRISTINE BRANNON, CLARA M. CHARRON, JAMES DAVIS, MARK DELIA, MIKE FUNK, JEFFREY GABOR, LISA JOHNSON, TRAVIS JONES, PATRICK KEANE, DILLION KEARNEY, WILLIAM T. LEMON, ANGELA LOCKE, MATTHEW MITCHEY, ALAN PASLEY, JOSE RIVERA, WILLIAM ROBERTS, ZACHARY SAPP, TRINA SNYDER, SEAN WHELTON, and FELIPE ZAVALA, by and through their attorney, Lisa Madigan, Attorney General of the State of Illinois, and hereby file their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint [Doc. 14], stating as follows:

### INTRODUCTION

1. On December 28, 2015, Plaintiff was raped by a correctional officer at Logan Correctional Center. Her rape occurred under the noses of several correctional staff who saw the sexual assault and did nothing. In fact, there is a widespread practice at Logan Correctional Center of failing to intervene to prevent sexual assaults and sexual harassment against prisoners at Logan, a practice which emboldened Plaintiff's rapist.

**RESPONSE:  Defendants admit that an investigation conducted by the Illinois Department of Corrections substantiated allegations that Plaintiff had sexual intercourse with a correctional officer, Erik M. Kohlrus, at Logan Correctional Center on December 28, 2015.  Defendants lack any personal knowledge of that sexual encounter and deny the remaining allegations contained in this paragraph.**

2.      Plaintiff reported to medical staff at the prison that she had been raped.  But rather than take Plaintiff's complaint seriously, the investigators to whom the complaints was referred threatened Plaintiff and retaliated against her.

**RESPONSE:  Defendants admit that an investigation was conducted by the Illinois Department of Corrections after Plaintiff reported to medical staff at Logan Correctional Center that she had sexual intercourse with Correctional Officer Kohlrus.  Defendants deny the remaining allegations contained in this paragraph.**

3.      Accordingly, Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**REPSONSE:  Defendants admit that Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Defendants deny that they deprived Plaintiff of any of her rights.**

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

**RESPONSE:  Defendants admit the allegations contained in this paragraph, except as to those claims barred by sovereign immunity.**

5.      Venue is proper under 28 U.S.C. § 1391(b).  On information and belief Defendants reside in this judicial district, and the events giving rise to the claims asserted herein

all occurred within this district.

**RESPONSE: Defendants admit that venue is proper and that the events giving rise to the claims all occurred within this district. Defendants deny that they all reside in this judicial district.**

## PARTIES

6.      In December of 2015, and at all times relevant to the events at issue in this case, Plaintiff Jacqueline FARRIS, was in the custody of the Illinois Department of Corrections (IDOC). She was incarcerated at Logan Correctional Center in December 2015, and then transferred to Decatur Correctional Center in January 2016. She currently remains in custody of IDOC and is housed at Fox Valley Adult Transition Center.

**RESPONSE: Defendants admit the allegations contained in this paragraph.**

7.      At all times relevant to her involvement in this case, Defendant CHRISTINE BRANNON was employed by the IDOC in the capacity of Warden of Logan Correctional Center. As such, Defendant BRANNON was acting under color of law. Defendant BRANNON is being sued in her individual capacity for the challenged conduct.

**RESPONSE: Defendants admit the allegations contained in this paragraph. Defendant Brannon states that she was Warden of Logan Correctional Center from August 2015 to February 2016, and states that she is currently the Warden of East Moline Correctional Center.**

8.      At all times relevant to her involvement in this case, Defendant BRANNON was responsible for the organization and supervision of Logan Correctional Center. In that capacity, and at all times relevant to her involvement in this case, Defendant BRANNON promulgated rules, regulations, policies, and procedures as Warden of Logan Correctional Center to guarantee

the reasonable safety of inmates at the facility. Defendant BRANNON's rules, regulations, policies and procedures were implemented by and through the Correctional Officers and Internal Affairs Investigators at Logan Correctional Center.  As Warden, Defendant BRANNON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing staff on inmate violence, such as sexual assaults by guards and the adherence of each facility to the Prison Rape Elimination Act ("PREA").

**RESPONSE:  Defendant Brannon denies that she was responsible for the adherence of _each_ facility to the Prison Rape Elimination Act ("PREA"), but admits that during her time as Warden of Logan Correctional Center she was responsible, along with other staff, for the adherence of Logan Correctional Center to PREA.  Defendants admit the remaining allegations contained in this paragraph, to the extent that the responsibilities described in this paragraph were joint responsibilities shared between Defendant Brannon and others.**

9.      Additionally, at all times relevant to the events at issue in this case, Defendant BRANNON was responsible for the hiring, supervision, training, and retention of Correctional Officers employed by the Illinois Department of Corrections and assigned to Logan Correctional Center, including Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY.

**RESPONSE:  Defendant Brannon denies that she was personally responsible for the hiring of each of the named Correctional Officers.  Defendants admit the remaining allegations contained in this paragraph, to the extent that the responsibilities described in this paragraph were joint responsibilities shared between Defendant Brannon and others.**

10.     At all times relevant to her involvement in this case, Defendant CLARA

CHARRON was employed by the IDOC in the capacity as the PREA Compliance Manager at

Logan Correctional Center.  As such, Defendant CHARRON was acting under color of law.

Defendant CHARRON is being sued in her individual capacity for the challenged conduct.

**REPSONSE:  Defendants deny the allegations contained in this paragraph, and
state that Defendant Charron was not PREA Compliance Manager at Logan Correctional
Center after November 19, 2015.**

11.     At all times relevant to her involvement in this case, and in the capacity of PREA

Compliance Manager, Defendant CHARRON was responsible for, among other things, ensuring

the reasonable safety of inmates, including preventing sexual assaults by guards and adherence

by the facility to the PREA.  Defendant CHARRON promulgated rules, regulations, policies, and

procedures in regards to PREA which were implemented by the Warden of Logan Correctional

Center, as well as other PREA Compliance Managers, Correctional Officers at Logan

Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:  Defendants deny the allegations contained in this paragraph, as
Defendant Charron was not PREA Compliance Manager at Logan Correctional Center
during the times relevant to this case.**

12.     At all times relevant to her involvement in this case, Defendant NORINE

ASHLEY was employed by the IDOC in the capacity as a Psychologist, Mental Health

Administrator: PREA Compliance Manager.  As such, Defendant ASHLEY was acting under

color of law.  Defendant ASHLEY is being sued in her individual capacity for the challenged

conduct.

**RESPONSE:  Defendants admit the allegations contained in this paragraph.**

13.     At all relevant times to her involvement in this case, and in the capacity of a Psychologist, Mental Health Administrator: PREA Compliance Manager, Defendant ASHLEY was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA.  Defendant ASHLEY promulgated rules, regulations, policies, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:  Defendants admit that Defendant Ashley was responsible, together with others, for ensuring that the PREA practices and procedures set forth in national standards, IDOC Administrative Directive(s), and Logan Correctional Center Institutional Directive(s) were followed at Logan.  Defendants deny that Defendant Ashley created or "promulgated" these rules, regulations, policies, and procedures in any other manner.  Defendants deny the remaining allegations contained in this paragraph.**

14.     At all times relevant to her involvement in this case, Defendant LISA JOHNSON was employed by the IDOC in the capacity as a Back-up to the PREA Compliance Manager.  As such, Defendant JOHNSON was acting under color of law.  Defendant JOHNSON is being sued in her individual capacity for the challenged conduct.

**RESPONSE:  Defendants admit the allegations contained in this paragraph.**

15.     At all times relevant to her involvement in this case, and in the capacity of Backup to the PREA Compliance Manager, Defendant JOHNSON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant JOHNSON promulgated rules,

regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE: Defendants admit that Defendant Johnson was responsible, together with others, for ensuring that the PREA practices and procedures set forth in national standards, IDOC Administrative Directive(s), and Logan Correctional Center Institutional Directive(s) were followed at Logan. Defendants deny that Defendant Johnson created or "promulgated" these rules, regulations, policies, and procedures in any other manner. Defendants deny the remaining allegations contained in this paragraph.**

16. At all times relevant to their involvement in this case, PATRICK KEANE and MIKE FUNK, as Agency PREA Coordinators, were responsible for, among other things, developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

**RESPONSE: Defendants deny that Defendant Keane was the IDOC agency PREA Coordinator at all times relevant to this case, and state that Defendant Keane last served in that role on November 13, 2015. Defendants admit that, for a period of time prior to November 13, 2015, Defendant Keane was responsible for IDOC efforts to comply with PREA standards in facilities including Logan Correctional Center. Defendants admit that Defendant Funk was PREA Coordinator from approximately November 13, 2015, until approximately June 2016, and that during that time he was responsible for IDOC efforts to comply with PREA standards in facilities including Logan Correctional Center.**

17. At all times relevant to their involvement in this case, and in the capacity of

Agency PREA Coordinators, Defendants KEANE and FUNK promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE: Defendants admit that Defendant Keane shared some of the responsibilities outlined in the foregoing paragraph for a period of time prior to November 13, 2015. Defendants deny the allegations against Defendant Keane as it relates to any time period after November 13, 2015. Defendants admit that Defendant Funk shared some of the responsibilities outlined in the foregoing paragraph from approximately November 13, 2015, until approximately June 2016. Defendants deny the remaining allegations contained in this paragraph.**

18.     At all times relevant to their involvement in this case, FELIPE ZAVALA and ALAN PASLEY, as Back-Up Agency PREA Coordinators, were responsible for, among other things, providing assistance to the Agency PREA Coordinators in developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

**REPSONSE: Defendants admit that Defendants Zavala and Pasley were, for a period of time, assigned as Back-Ups to the Agency PREA Coordinator. Defendants deny that they were actively involved in the tasks alleged in the foregoing paragraph.**

19.     At all times relevant to their involvement in this case, and in the capacity of Back-Up Agency PREA Coordinators, Defendants ZAVALA and PASLEY promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the

facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**REPSONSE:  Defendants deny the allegations contained in this paragraph.**

20.     On or about December 28, 2015, and at all times relevant to their involvement in this case, Defendants Logan Correctional Center Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA were employed by the IDOC and worked at Logan Correctional Center.  As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities.  Defendants Logan Correctional Center Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA were responsible for, among other things, ensuring the equitable enforcement of rules and regulations promulgated by the Warden during Internal Affairs investigations, including the rules and regulations aimed at investigating sexual assaults by guards and adherence by Logan Correctional Center to the PREA.

**RESPONSE:  Defendants admit that Defendants Gabor and Delia were employed by the IDOC on or about December 28, 2015, and that they were assigned to conduct investigations, including investigations regarding alleged sexual assaults and PREA complaints.  Defendants deny that they were employed at Logan Correctional Center and deny that the remaining allegations contained in this paragraph accurately summarize their responsibilities.**

21.     On or about December 28, 2015, and at all times relevant to her involvement in this case, Defendant AMY RUDE, L.C.S.W. was employed at Logan Correctional Center in the

position of a Social Worker.  As such, Defendant RUDE was acting under color of law and within the scope of her employment and is sued in her individual capacity.  Defendant RUDE was responsible for, among other things, ensuring effective and equitable mental health treatment and mental health classifications of inmates housed at Logan Correctional Center.

**RESPONSE:  The undersigned does not represent Defendant Rude.  Defendants state that Defendant Rude was employed by Wexford Health Sources, Inc., at all relevant times, and lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

22.      On or about December 28, 2015, and at all times relevant to their involvement in this case, Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY were employed by the IDOC and worked at Logan Correctional Center.  As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities.

**RESPONSE:  The undersigned does not represent Defendants Kohlrus, Woolfolk, and Jackson.   Defendants admit that Defendants Mitchey, Barry, Lemon, Adams, Ahart, Whelton, Rivera, Roberts, Davis, Sapp, Billington, and Kearney were employed by the IDOC at Logan Correctional Center on or about December 28, 2015.  However, Defendants state that Defendant Lemon is no longer employed by the IDOC, that Defendant Rivera is still employed by the IDOC but does not work at Logan Correctional Center, and that Defendants did not necessarily all work on December 28, 2015.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

23.     Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY were responsible for, among other things, ensuring the control and safety of all inmates housed at Logan Correctional Center, including Plaintiff.

**RESPONSE: The undersigned does not represent Defendants Kohlrus, Woolfolk, and Jackson. Defendants deny that they were personally responsible for the control and safety of all inmates at Logan Correctional Center, including Plaintiff, and state that they were assigned to particular housing units and/or wings, and were generally responsible only for the inmates within those housing units and/or wings. Defendants deny that they were responsible for Plaintiff's housing unit 15, B-wing.**

24.     On or about May of 2016, Defendants SNYDER, LOCKE, and JONES were employed by the IDOC and worked at Decatur Correctional Center. As such, the Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities. Defendants SNYDER, LOCKE, and JONES were responsible for, among other things, discipline of inmates and internal affairs investigations at Decatur Correctional Center, including the discipline and investigation of disciplinary infractions alleged against Plaintiff.

**RESPONSE: Defendants admit that Defendants Snyder, Locke, and Jones were employed by the IDOC and worked at Decatur Correctional Center on or about May 2016. Defendant Snyder admits that she was responsible for internal affairs investigations at Decatur and that she, along with others, could issue disciplinary tickets to inmates. Defendant Jones denies that he had any responsibility for internal affairs investigations.**

**Defendants deny that they were responsible for the imposition of discipline, which would be the responsibility of the Adjustment Committee. Defendants deny that the remaining allegations contained in this paragraph accurately summarize their responsibilities.**

25. Defendant ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC) is the Illinois state agency responsible for the operation of various correctional facilities throughout the State of Illinois, including Logan Correctional Center and Fox Valley Adult Transition Center. Defendant IDOC is a governmental subdivision of the State of Illinois.

**RESPONSE: Defendants admit the allegations contained in this paragraph.**

### FACTUAL ALLEGATIONS

26. Plaintiff entered Logan Correctional Center on December 4, 2015. She had been sentenced to 180 days in the Boot Camp facility (equating to 120 days with good time credits, less time already served). Her sentence included a provision that if she did not complete Boot Camp, she would face a six year incarceration. Plaintiff was intent on completing her sentence at Boot Camp in 120 days, without any delay, and returning home to her two young boys.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

27. Once at Logan Correctional Center, and as part of being placed in "Boot Camp Status," Plaintiff was permitted to change out of the standard prison garb and wear sweatpants and a sweatshirt labeled "Boot Camp." She, along with other women being sent to Boot Camp, were housed in a unit separate from the general population and were expected to perform all tasks around the prison, such as serve food trays, clean the laundry, clean the units, and generally help out around the prison while waiting for availability at the Boot Camp to open. Because of their status, the inmates, including Plaintiff, were permitted to leave their cell doors unlocked at

all times and come and go throughout the facility as needed, and at the direction of the correctional officers, to complete their tasks.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

28.    In and around December of 2015, Defendant KOHLRUS was employed as a Correctional Officer and was assigned to the third shift in Plaintiff's unit. Defendant KOHLRUS initiated contact with Plaintiff. While conducting cell checks, Defendant KOHLRUS would bang his flashlight against Plaintiff's cell door, and instruct Plaintiff to meet him at the cell door to talk. On at least one occasion, Defendant KOHLRUS instructed Plaintiff to undress so that he could watch.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

29.    On one occasion, Defendant KOHLRUS explained to Plaintiff that because he was being reassigned to a different area of the prison where they would not see each other, he had a plan to meet her in the laundry room during his shift.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

30.    Defendant KOLHRUS' plan to meet Plaintiff in the laundry room during his shift necessitated the knowledge and agreement of Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAP, BILLINGTON, and KEARNEY who were aware of his

whereabouts in the prison during his shift and permitted his plan with Plaintiff to unfold without interruption.

**RESPONSE: The undersigned does not represent Defendant Kohlrus, Woolfolk, and Jackson. Defendants deny the allegations contained in this paragraph.**

31. Following Defendant KOHLRUS' directions, Plaintiff met with him in the laundry room on December 28, 2015. When Defendant KOHLRUS made sexual advances towards her, Plaintiff became scared and nervous. She ran back to her cell.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants admit that an investigation conducted by the Illinois Department of Corrections contained statements by Plaintiff and Defendant Kohlrus that indicate that Plaintiff met Defendant Kohlrus in the laundry room on December 28, 2015, that the two engaged in sexual activity, and that after approximately two minutes Plaintiff returned to her cell because she feared getting caught. Defendants lack any personal knowledge about the truth of those statements, and lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

32. Defendant KOHLRUS followed Plaintiff back to her cell. He told her, "I have a plan" and "I want you to come back down," or words to that effect. Plaintiff complied.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants admit that an investigation conducted by the Illinois Department of Corrections contained statements by Plaintiff and Defendant Kohlrus that Defendant Kohlrus spoke to Plaintiff at her cell, and that they returned to the laundry room. Defendants lack any personal knowledge about the truth of those statements, and lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this**

**paragraph**.

33.     While back in the laundry room, Plaintiff could see Defendants Logan
Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART,
WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and
KEARNEY working in the "bubble" or control tower.  At no point did any of these Defendants
intervene and/or stop Defendant KOHLRUS' actions.

**RESPONSE:  The undersigned does not represent Defendants Kohlrus, Woolfolk
and Jackson.  Defendants deny that they were present in the "bubble" or control tower and
therefore deny that they could have intervened and/or stopped Defendant Kohlrus' actions.**

34.     Defendant KOHLRUS engaged Plaintiff in non-consensual sexual acts.
Afterwards he said words to the effect of "good girl" and reminded Plaintiff that she would not
go to boot camp if she told anyone.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants
admit that an investigation conducted by the Illinois Department of Corrections contained
statements by Plaintiff and Defendant Kohlrus that they engaged in sexual acts, but that
both Plaintiff and Defendant Kohlrus indicated during the investigation that the acts were
consensual.  Defendants lack any personal knowledge about the truth of those statements,
and lack knowledge or information sufficient to form a belief about the truth of the
remaining allegations contained in this paragraph**.

35.     Plaintiff was unprepared for what had occurred in the laundry room.  She
confided in the nurse at Logan Correctional Center, and then later the Medical Director.  Plaintiff
consented to a rape kit.

**RESPONSE:  Defendants admit that IDOC records contain incident reports and**

medical records indicating that Plaintiff spoke to medical staff at Logan Correctional Center regarding the incident and that Plaintiff consented to a rape kit.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

36.     Plaintiff was then instructed to speak with Logan Correctional Center Case Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA, who yelled and threatened her that she was going to get hit with extra charges if the rape kit did not come back positive.  Scared, Plaintiff told the Defendants GABOR and DELIA that she had consented to Defendant KOHLRUS' actions.

**RESPONSE:  Defendants admit that Plaintiff spoke with Defendant Jeff Gabor. Defendants admit that Plaintiff stated that she had consented to Defendant Kohlrus' actions.  Defendants deny yelling at and/or threatening Plaintiff in any way.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

37.     Based on her reporting, Plaintiff was then placed in isolated.  At no point during her time in isolation was she afforded the opportunity to challenge her confinement.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

38.     The isolation unit was intense.  Plaintiff—although not suicidal—was confined to a cell alongside women who were placed on suicide watch.  The women had obvious mental health problems and, with cells that you could see straight into, Plaintiff had no privacy from their experiences.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief**

**about the truth of the allegations contained in this paragraph.**

39.     Plaintiff did not forget that she was sentenced to Boot Camp, and remained focused on getting home to her children.  She was persistent in asking when she would be let out of segregation, but received no information, and no paperwork, in regards to her continued detention or the Internal Affairs Investigation into the rape.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

40.     Plaintiff was offered anti-anxiety medication while in segregation.  At first she refused, but the stress of the unit and the lack of information regarding her situation bore down on her.  Eventually she capitulated and took the anti-anxiety medication.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

41.     Once Plaintiff accepted the anti-anxiety medication, she was then informed by Defendants that she was no longer eligible for Boot Camp due to her mental health status.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

42.     Plaintiff was forced by Defendants GABOR and DELIA to sign a statement that she would not discuss the Internal Affairs Investigation relating to Defendant KOHLRUS' actions—despite not being provided with any information on the investigation, including whether the investigation concluded and what the findings were.

**RESPONSE:  Defendants admit that Plaintiff signed the Investigational Interview summary written by Defendant Gabor.  Defendants deny the remaining allegations contained in this paragraph.**

43.    Plaintiff was sent to Decatur Correctional Center on January 21, 2016.  Plaintiff

was disciplined at Decatur Correctional Center by Defendants SNYDER, LOCKE, and JONES

after allegedly discussing the incident.

**RESPONSE:  Defendants admit that Plaintiff was transferred to Decatur**

**Correctional Center on or about January 2016.  Defendants admit that Defendant Snyder**

**issued Plaintiff a disciplinary ticket, but deny the remaining allegations contained in this**

**paragraph.**

44.    Plaintiff left Decatur Correctional Center on July 12, 2017, and is currently

housed at Fox Valley Adult Transition Center.

**RESPONSE:  Defendants admit that Plaintiff is currently housed at Fox Valley**

**Adult Transition Center.  Defendants lack knowledge or information sufficient to form a**

**belief about the truth of the remaining allegations contained in this paragraph.**

**Count I**
**42 U.S.C. § 1983 – Excessive Force (Eighth Amendment)**
**Against Defendant KOHLRUS**

45.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE:  Defendants incorporate their responses to each paragraph of this**

**Complaint as if fully restated herein.**

46.    As described more fully above, Defendant KOHLRUS used force against

Plaintiff.  That force, in the form of a rape, was objectively unreasonable and meant to degrade

and humiliate Plaintiff.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants**

**lack knowledge or information sufficient to form a belief about the truth of the allegations**

**contained in this paragraph.**

47. In using force against Plaintiff, Defendant KOHLRUS used extreme or excessive cruelty toward her for the purpose of causing harm, including degradation and humiliation. The actions by Defendant KOHLRUS were not in a good faith effort to maintain or restore security or discipline.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

48. Alternatively, Defendant KOHLRUS knew that using force presented a risk of harm to Plaintiff, but recklessly disregarded that risk and Plaintiff's emotional and physical safety by failing to take reasonable measures to minimize the risk of harm.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

49. As a direct and proximate result of Defendant's misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendants deny that they violated any of Plaintiff's rights whatsoever. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations against Defendant Kohlrus contained in this paragraph.**

**Count II**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**August Defendant KOHLRUS**

50. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendants incorporate their responses to each paragraph of this**

**Complaint as if fully restated herein.**

51.     As described more fully above, Defendant KOHLRUS committed a serious battery, including rape, against Plaintiff under color of state law.  In so doing, Defendant KOHLRUS denied Plaintiff due process of law in that he engaged in arbitrary government action that deprived her of her liberty, violated her right to bodily integrity, and was so malfeasant as to shock the conscience.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

52.     Defendant KOHLRUS' misconduct was undertaken with malice, willfulness, and/or reckless indifference to Plaintiff's rights and was objectively unreasonable.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

53.     Defendant KOHLRUS' actions as described more fully above were committed within the scope of his employment and under color of law.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

**Count III**
**42 U.S.C. § 1983 – Deliberate Indifference**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY**

54.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE:  Defendants incorporate their responses to each paragraph of this**

**Complaint as if fully restated herein.**

55. Defendant KOHLRUS' rape of Plaintiff was not an isolated incident at Logan Correctional Center and Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KENAE, FUNK, ZAVALA, and PASLEY were each on notice of the custom, policies, and practices at Logan Correctional Center that permitted this type of misconduct to flourish.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

56. Specifically, in December 2015, and for a period of time prior thereto, Defendant BRANNON, as Warden of Logan Correctional Center, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Logan Correctional Center. In December 2015, and for a period of time prior thereto, Defendant BRANNON, as Warden of Logan Correctional Center, knew or should have known of a widespread practice by IDOC employees at Logan Correctional Center who engaged in guard-on-inmate sexual assaults, by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

**RESPONSE: Defendants admit that, during her time as Warden of Logan Correctional Center, Defendant Brannon was responsible, together with others, for the creation, implementation, oversight, and supervision of certain policies and procedures followed by IDOC employees at Logan Correctional Center. Defendants admit that Defendant Brannon would have been aware of statistics and reports relating to allegations of guard-on-inmate sexual assaults. Defendants deny the remaining allegations contained in this paragraph.**

57. In December 2015, and for a period of time prior thereto, Defendants KEANE

and FUNK, as Agency PREA Coordinators, and ZAVALA and PASLEY, as Back-Up Agency PREA Coordinators, were responsible for the creation, implementation, oversight, and supervision of the statewide policies and procedures followed by IDOC employees, including those employees at Logan Correctional Center that related to PREA violations. In December 2015, and for a period of time prior thereto, Defendants KEANE, FUNK, ZAVALA, and PASLEY knew or should have known of a widespread practice by IDOC employees, including employees at Logan Correctional Center, who engaged in guard-on-inmate sexual assaults, including rapes, by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

**RESPONSE:  Defendants admit that statistics and reports were maintained relating to allegations of guard-on-inmate sexual assaults at Logan Correctional Center. Defendants deny that the allegations contained in this paragraph accurately summarize their responsibilities during December 2015, and deny the remaining allegations contained in this paragraph.**

58.     In December 2015, and for a period of time prior thereto, Defendant CHARRON, as PREA Compliance Manager at Logan Correctional Center, Defendant ASHLEY, as Mental Health Administrator: PREA Compliance Manager at Logan Correctional Center, and Defendant JOHNSON, as Back-Up to the PREA Compliance Manager at Logan Correctional Center were responsible for the creation, implementation, oversight, and supervision of policies and procedures followed by IDOC employees at Logan Correctional Center that related to PREA violations. In December 2015, and for a period of time prior thereto, Defendants CHARRON, ASHLEY, and JOHNSON knew or should have known of a widespread practice by IDOC

employees at Logan Correctional Center who engaged in guard-on-inmate sexual assaults, including rapes, by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

**RESPONSE: Defendants admit that statistics and reports were maintained relating to allegations of guard-on-inmate sexual assaults at Logan Correctional Center. Defendants deny that the allegations contained in this paragraph accurately summarize their responsibilities during December 2015, and deny the remaining allegations contained in this paragraph.**

59.     The above-described widespread practice, so well-settled as to constitute a de facto policy of Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY was able to exist and thrive because Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY, who had authority over the same, exhibited deliberate indifference to the problem. Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY manifested deliberate indifference to these constitutional violations by failing to take reasonable measures to remedy these violations. Among other things, Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY failed to adequately train, supervise, control, and discipline, including terminate, IDOC employees who engaged, or were accused of engaging in, staff on inmate assaults, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY directed, knew about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's

constitutional rights, and violated Plaintiffs rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

60.    As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress**.**

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

**Count IV**
**42 U.S.C. § 1983 – Failure to Intervene**
**Against Defendants WOOLFOLK, MITCHEY, BARRY, LEMON, and ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY**

61.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendants incorporate their responses to each paragraph of this Complaint as if fully restated herein.**

62.    As described more fully above, Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

**RESPONSE: The undersigned does not represent Defendants Woolfolk and Jackson.  Defendants deny the allegations contained in this paragraph.**

63.    Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY knew of a substantial risk of harm to Plaintiff's safety, and could see or had the opportunity to see the harm occurring to Plaintiff as she was raped, or knew

that the rape was going to occur, but consciously disregarded the risk Plaintiff was experiencing by failing to take reasonable steps to prevent the harm from occurring, or stopping it as it occurred.

**RESPONSE: The undersigned does not represent Defendants Woolfolk and Jackson. Defendants deny the allegations contained in this paragraph.**

64. Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY failure to act was intentional, done with malice, and /or done with reckless indifferent to Plaintiff's rights.

**RESPONSE: The undersigned does not represent Defendants Woolfolk and Jackson. Defendants deny the allegations contained in this paragraph.**

65. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

**Count V**
**42 U.S.C. § 1983 – Conspiracy**
**Against Defendants KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, and ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY**

66. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendants incorporate their responses to each paragraph of this Complaint as if fully restated herein.**

67. Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY reached an agreement among themselves to

deprive Plaintiff of her constitutional rights and to protect one another from liability for deprive Plaintiff of her rights, all as described in the various paragraphs of this Complaint.

**RESPONSE: The undersigned does not represent Defendants Kohlrus, Woolfolk and Jackson. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations against Defendants Kohlrus, Woolfolk and Jackson. Defendants deny the remaining allegations contained in this paragraph.**

68.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

69.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

70.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated and she suffered injuries, including emotional distress.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

71.     Plaintiff's injuries were caused by Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY who were all employees of the IDOC at Logan Correctional Center and who acted pursuant to the policies and practices of Logan Correctional Center.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

**Count VI**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, RUDE, GABOR and DELIA**

72.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE:  Defendants incorporate their responses to each paragraph of this Complaint as if fully restated herein.**

73.     As stated more fully above, following the rape and Plaintiff's subsequent report, Plaintiff was placed in isolation and denied Boot Camp status. The conditions that Plaintiff experienced in isolation, including her eventual denial of Boot Camp status, were atypical and significantly imposed such a hardship on her that the risk of having to endure those conditions triggered a liberty interest requiring due process.

**RESPONSE:  Defendants admit that Plaintiff was eventually denied Boot Camp status, insofar as "Boot Camp" refers to the Impact Incarceration Program.  Defendants deny the remaining allegations contained in this paragraph.**

74.     Defendants failed to provide Plaintiff with due process before depriving her of that liberty interest. Specifically, Plaintiff had no hearing and no opportunity to dispute her continued confinement or denial from Boot Camp.

**RESPONSE:  Defendants deny that they deprived Plaintiff of a liberty interest and deny that Plaintiff was entitled to a hearing.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

75.     The misconduct committed by Defendants was not random and unauthorized, but instead was the foreseeable result of the policies and practices of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendants RUDE, GABOR and DELIA.

**RESPONSE:  Defendants deny committing any misconduct whatsoever, and therefore deny the allegations contained in this paragraph.**

76.     Specifically, in December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, were responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Logan Correctional Center as they related to PREA violations and staff-on-inmate violence, including the investigation and discipline of inmates who make such reports. In December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON knew or should have known of a widespread practice at Logan Correctional Center that limited inmates' due process rights who made reports of PREA violations and staff-on-inmate violence by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, internal affairs investigatory reports, meetings, and lawsuits.

**RESPONSE:  Defendants admit that they shared responsibility, with others, for the implementation and oversight of certain policies and procedures at Logan Correctional Center.  Defendants deny the remaining allegations contained in this paragraph.**

77.     The above-described widespread practice, so well-settled as to constitute a de facto policy of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON was able to exist and thrive through the Defendants RUDE, GABOR and DELIA because Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, who had authority over the same, exhibited deliberate indifference to the problem. Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON manifested deliberate indifference to these constitutional violations taken by the Defendants RUDE, GABOR and DELIA by failing to take reasonable measures to remedy these violations. Among other things, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON failed to adequately train, supervise, control, and discipline, including terminate,

the Defendants RUDE, GABOR and DELIA who engaged, or were accused of engaging in, due process violations, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON directed, knew about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's constitutional rights, and violated Plaintiffs rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

78.     As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

## Count VII
### 42 U.S.C. § 1983 – Retaliation (First Amendment)
### Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, GABOR, DELIA, SNYDER, LOCKE, and JONES

79.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendants incorporate their responses to each paragraph of this Complaint as if fully restated herein.**

80.     Plaintiff made statements about her sexual assault to prisoners and prison staff. These statements addressed a matter of public concern and were protected by the First Amendment.

**RESPONSE: Defendants admit that Plaintiff made statements regarding the foregoing allegations of sexual assault to prisoners and prison staff not involved in the investigation. Defendants admit that Plaintiff's right to discuss the allegations of sexual assault is generally protected under the First Amendment, but deny that any and all regulations placed on that right are invalid.**

81. As a result of those statements Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendants GABOR and DELIA retaliated against Plaintiff, placing her in segregation and punishing her. Plaintiff's statements were the cause and/or a motivating factor in the Defendants' decision to take the retaliatory actions.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

82. Defendants' retaliation is likely to deter First Amendment activity by Plaintiff, or a person in Plaintiff's position, in the future.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

83. Plaintiff suffered a further deprivation of her Constitutional rights that deterred future First Amendment activity when she was forced by Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendants GABOR and DELIA to sign an agreement stating she would not discuss the rape committed by Defendant KOHLRUS.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

84. Despite being forced to sign an agreement to the contrary, Plaintiff's right to discuss Defendant KOHLRUS' sexual assault against her is a protected activity under the First Amendment.

**RESPONSE: Defendants admit that Plaintiff's right to discuss the allegations of sexual assault is generally protected under the First Amendment, but deny that any and all regulations placed on that right are invalid.**

85. Plaintiff further suffered a deprivation of her Constitutional rights that deterred future First Amendment activity when she was punished for allegedly discussing the assault by Defendants SNYDER, LOCKE, and JONES while incarcerated at Decatur Correctional Center.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

86.     As a result of Defendants' misconduct Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

### Count VIII
### 42 U.S.C. § 12132 – Americans with Disabilities Act Claim
### Against Defendant IDOC

87.     Title II of the Americans with Disabilities Act prohibits exclusion of qualified individuals from participation in services, programs, or activities by public entities like Defendant IDOC.

**RESPONSE: Defendants admit the allegations contained in this paragraph.**

88.     At all times relevant to her claims in this case, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

89.     The claims under the ADA are brought against Defendant IDOC as a department of the State of Illinois.

**RESPONSE: Defendants admit that the Illinois Department of Corrections is a department of the State of Illinois, and admit that Plaintiff brings claims under the ADA. Defendants deny any violation of the ADA.**

90.     Defendant IDOC is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

**RESPONSE: Defendants admit the allegations contained in this paragraph.**

91.     Plaintiff was excluded and / or discriminated from participating in, and was denied the benefits of, the Impact Incarceration Program ("Boot Camp") due to her disability.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

92.     Plaintiff's exclusion and/or discrimination from the Impact Incarceration Program was a direct and proximate result of her disability.

**RESPONSE:  Defendants deny the allegations contained in this paragraph.**

**Count IX**
**29 U.S.C. § 794(a)—Rehabilitation Act Claim**
**Against Defendant IDOC**

93.     For any program or activity receiving federal financial assistance, the Rehabilitation Act prohibits a qualified individual with a disability from being excluded from participating in, being denied the benefits of, or being subjected to discrimination in any such program or activity.

**RESPONSE:  Defendants admit the allegations contained in this paragraph.**

94.     Plaintiff is a qualified "individual with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

95.     At all times relevant to Plaintiff's claims, Defendant IDOC, as a department of the State of Illinois, received "[f]ederal financial assistance" within the meaning of 29 U.S.C. § 794(a).

**RESPONSE:  Defendants admit the allegations contained in this paragraph.**

96.     The operations of Defendant IDOC, including the Impact Incarceration Program, are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B).

**RESPONSE:  Defendants admit the allegations contained in this paragraph relating to 29 U.S.C. § 794(b)(1)(A)-(B).  Defendants lack knowledge or information sufficient to**

form a belief about the truth of the remaining allegations contained in this paragraph.

97.     Plaintiff was excluded and / or discriminated from participating in, and was denied the benefits of, the Impact Incarceration Program ("Boot Camp") due to her mental health needs, including requiring psychotropic medication.

**RESPONSE:  Defendants admit that Plaintiff was denied participation in the Impact Incarceration Program by Defendant Rude, due to Plaintiff's requirement of psychotropic medication.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

98.     Plaintiff's exclusion and/or discrimination from the Impact Incarceration Program was a direct and proximate result of her disability.

**RESPONSE:  Defendants deny the allegations contained in this paragraph.**

**Count X**
**Illinois State Law – Assault & Battery**
**Against Defendant KOHLRUS**

99.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendants incorporate their responses to each paragraph of this Complaint as if fully restated herein.**

100.     Pleading in the alternative, and as described more fully above, Defendant KOHLRUS made physical contact with Plaintiff without valid cause. That physical contact was offensive and harmful.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants admit that an investigation conducted by the Illinois Department of Corrections substantiated allegations that Plaintiff had sexual intercourse with a correctional officer, Defendant Kohlrus.  Defendants lack any personal knowledge about that encounter and**

lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

101. As described more fully above, Defendant KOHLRUS intended to harm and/or frighten Plaintiff without valid cause. His actions did in fact cause Plaintiff fear and apprehension.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants admit that an investigation conducted by the Illinois Department of Corrections substantiated allegations that Plaintiff had sexual intercourse with a correctional officer, Defendant Kohlrus. Defendants lack any personal knowledge about that encounter and lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

102. As a direct and proximate result of Defendant KOHLRUS' conduct, Plaintiff experienced injuries, including emotional distress.

**RESPONSE: The undersigned does not represent Defendant Kolhrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

**Count XI**
**Illinois State Law – Sexual Abuse**
**Against Defendant KOHLRUS**

103. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendants incorporate their responses to each paragraph of this Complaint as if fully restated herein.**

104. In the manner described more fully above, Defendant KOHLRUS' actions were done intentionally, willfully and wantonly, or with such reckless disregard for their natural

consequences as to constitute the tort of sexual abuse under the laws and constitution of the State of Illinois

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

105.    As a direct and proximate result of Defendant KOHLRUS' conduct, Plaintiff experienced injuries, including emotional distress.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

**Count XII**
**Illinois State Law – Intentional Infliction of Emotional Distress**
**Against Defendant KOHLRUS**

106.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE:  Defendants incorporate their responses to each paragraph of this Complaint as if fully restated herein.**

107.    Pleading in the alternative, and in the manner described more fully above, Plaintiff Defendant KOHLRUS engaged in extreme and outrageous conduct when he raped Plaintiff in the laundry room at Logan Correctional Center.

**RESPONSE:  The undersigned does not represent Defendant Kohlrus.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

108.    Defendant KOHLRUS' actions as set forth above were rooted in an abuse of power or authority.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

109.    Defendant KOHLRUS' actions as set forth above were undertaken intentionally or with knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

110.    Defendant KOHLRUS' actions, as set forth above, were undertaken intentionally, with malice, and/or reckless indifference to Plaintiff's rights.

**RESPONSE: The undersigned does not represent Defendant Kohlrus. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, JACQUELINE FARRIS, by and through her attorneys, LOEVY & LOEVY, respectfully requests that this Court enter judgment in her favor and against Defendants CHRISTINE BRANNON, as Warden of Logan Correctional Center; CLARA CHARRON, as PREA Compliance Manager at Logan Correctional Center; NORINE ASHLEY, as Mental Health Administrator: PREA Compliance Manager at Logan Correctional Center; LISA JOHNSON, as Back-Up to the PREA Compliance Manager at Logan Correctional Center; PATRICK KEANE and MIKE FUNK, as Agency PREA Coordinators; FELIPE ZAVALA and ALLEN PASLEY, as Back-Up Agency PREA Coordinators; Defendants Logan Correctional

Officer ERIK KOHLRUS; Logan Correctional Officer J. WOOLFOLK; Logan Correctional Officer MATTHEW MITCHEY; Logan Correctional Officer JAMES BARRY; Logan Correctional Officer WILLIAM LEMON; Logan Correctional Officer A. ADAMS; Logan Correctional Officer A. AHART; Logan Correctional Officer SEAN WHELTON; Logan Correctional Center LAURA JACKSON; Logan Correctional Center JOSE RIVERA; Logan Correctional Center WILLIAM ROBERTS; Logan Correctional Center JAMES DAVIS; Logan Correctional Center ZACHARY SAPP; Logan Correctional Center JENNIFER BILLINGTON; Logan Correctional Center DILLION KEARNEY; Logan Correctional Center Case Investigator JEFF GABOR; Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA; AMY RUDE, L.C.S.W.; Decatur Correctional Lieutenant SNYDER; Decatur Correctional Major JONES; and Decatur Correctional Officer LOCKE, awarding compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate.

**RESPONSE: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

## JURY DEMAND

Defendants demand a trial by jury in this matter.

## AFFIRMATIVE DEFENSES

1.      At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

2.      Plaintiff is a person incarcerated within the Illinois Department of Corrections at the time of filing this lawsuit. Plaintiff has failed to exhaust her administrative remedies regarding the allegations in this lawsuit. Therefore, her claims are barred by the Prison Litigation

Reform Act. 42 U.S.C. § 1997; *See also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532

(7th Cir. 1999).

      3.      Under the Eleventh Amendment, Plaintiff's complaint for monetary damages

against Defendants in their official capacity is barred by the doctrine of sovereign immunity.

      WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this

honorable Court deny Plaintiff any relief whatsoever and enter judgment in their favor.

                          Respectfully Submitted,

                          ERIC KOHL, et al.,

                            Defendants,

Mary Kaitlyn Clark-Joseph #6323742

Assistant Attorney General                LISA MADIGAN, Attorney General,

500 South Second Street                 State of Illinois,

Springfield, Illinois 62701

Telephone:    (217) 782-9014             Attorney for Defendants,

Facsimile:    (217) 782-8767

Email:  mkclarkjoseph@atg.state.il.us      By:   /s/Mary Kaitlyn Clark-Joseph

                                    Mary Kaitlyn Clark-Joseph

                                    Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

JACQUELINE FARRIS,          )
                                    )
        Plaintiff,         )
                                    )
      -vs-            )     No. 17-3279-SEM-TSH
                                    )
ERIC KOHL, et al.,          )
                                    )
        Defendants.     )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2018, the foregoing document, *Answer and Affirmative Defenses to First Amended Complaint*, was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Julie Marie Goodwin | julie@loevy.com |
| Sarah C. Grady | sarah@loevy.com |
| Sara Mayo Vig | sara@vig-law.com |
| Karen L. McNaught | kmcnaught@cassiday.com |

Respectfully submitted,

s/Mary Kaitlyn Clark-Joseph
Mary Kaitlyn Clark-Joseph #6323742
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
Phone: (217) 782-9014
Fax: (217) 524-5091
E-Mail: mkclarkjoseph@atg.state.il.us