**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| JACQUELINE FARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 17-3279-SEM-TSH |
| | ) | |
| ERIC KOHL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT WOOLFOLK'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES Defendant, JASMIN WOOLFOLK, by and through her attorney, Lisa Madigan, Attorney General of the State of Illinois, and hereby files her Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (doc. 14), stating as follows:

**INTRODUCTION**

1.        On December 28, 2015, Plaintiff was raped by a correctional officer at Logan Correctional Center.  Her rape occurred under the noses of several correctional staff who saw the sexual assault and did nothing.  In fact, there is a widespread practice at Logan Correctional Center of failing to intervene to prevent sexual assaults and sexual harassment against prisoners at Logan, a practice which emboldened Plaintiff's rapist.

**RESPONSE: Defendant admits an investigation conducted by the Illinois Department of Corrections substantiated allegations that Plaintiff had sexual intercourse with a correctional officer, Erik M. Kohlrus, at Logan Correctional Center on December 28, 2015.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations concerning that sexual encounter.**

**Defendant denies the remaining allegations in Paragraph 1.**

2.      Plaintiff reported to medical staff at the prison that she had been raped.  But rather than take Plaintiff's complaint seriously, the investigators to whom the complaints was referred threatened Plaintiff and retaliated against her.

**RESPONSE: Defendant admits an investigation was conducted by the Illinois Department of Corrections after Plaintiff reported to medical staff at Logan Correctional Center that she had sexual intercourse with Defendant Kohlrus.**

**Defendant denies the remaining allegations contained in Paragraph 2.**

3.      Accordingly, Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**REPSONSE: Defendant admits Plaintiff brings this action pursuant to 42 U.S.C. § 1983.**

**Defendant denies that she deprived Plaintiff of any of her constitutional rights.**

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

**RESPONSE:  Defendant admits the Court has jurisdiction of Plaintiff's action.**

5.      Venue is proper under 28 U.S.C. § 1391(b).  On information and belief Defendants reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**RESPONSE:  Defendant admits venue is proper, admits the events giving rise to the claims all occurred within this district, and admits she resides in this judicial district.**

**Defendant denies that all the remaining defendants reside in this judicial district.**

## PARTIES

6.      In December of 2015, and at all times relevant to the events at issue in this case, Plaintiff Jacqueline FARRIS, was in the custody of the Illinois Department of Corrections (IDOC). She was incarcerated at Logan Correctional Center in December 2015, and then transferred to Decatur Correctional Center in January 2016. She currently remains in custody of IDOC and is housed at Fox Valley Adult Transition Center.

**RESPONSE: Defendant admits the allegations contained in Paragraph 6.**

7.      At all times relevant to her involvement in this case, Defendant CHRISTINE BRANNON was employed by the IDOC in the capacity of Warden of Logan Correctional Center. As such, Defendant BRANNON was acting under color of law. Defendant BRANNON is being sued in her individual capacity for the challenged conduct.

**RESPONSE: Defendant admits Christine Brannon was the Warden of Logan Correctional Center from August 2015 to February 2016, admits Ms. Brannon is currently the Warden of East Moline Correctional Center, and admits that Ms. Brannon acted under color of law.**

8.      At all times relevant to her involvement in this case, Defendant BRANNON was responsible for the organization and supervision of Logan Correctional Center. In that capacity, and at all times relevant to her involvement in this case, Defendant BRANNON promulgated rules, regulations, policies, and procedures as Warden of Logan Correctional Center to guarantee the reasonable safety of inmates at the facility. Defendant BRANNON's rules, regulations, policies and procedures were implemented by and through the Correctional Officers and Internal Affairs Investigators at Logan Correctional Center. As Warden, Defendant BRANNON was responsible for, among other things, ensuring the reasonable safety of inmates, including

preventing staff on inmate violence, such as sexual assaults by guards and the adherence of each facility to the Prison Rape Elimination Act ("PREA").

**RESPONSE: Defendant admits Christine Brannon was the Warden of Logan Correctional Center from August 2015 to February 2016.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8.**

9.      Additionally, at all times relevant to the events at issue in this case, Defendant BRANNON was responsible for the hiring, supervision, training, and retention of Correctional Officers employed by the Illinois Department of Corrections and assigned to Logan Correctional Center, including Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY.

**RESPONSE: Defendant admits Christine Brannon, when she was Warden of Logan Correctional Center, was a supervisor of Defendant.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9.**

10.      At all times relevant to her involvement in this case, Defendant CLARA CHARRON was employed by the IDOC in the capacity as the PREA Compliance Manager at Logan Correctional Center.  As such, Defendant CHARRON was acting under color of law. Defendant CHARRON is being sued in her individual capacity for the challenged conduct.

**REPSONSE:  Defendant denies the allegations in Paragraph 10.**

11.      At all times relevant to her involvement in this case, and in the capacity of PREA Compliance Manager, Defendant CHARRON was responsible for, among other things, ensuring

the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant CHARRON promulgated rules, regulations, policies, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE: Defendant denies the allegations in Paragraph 10.**

12.     At all times relevant to her involvement in this case, Defendant NORINE ASHLEY was employed by the IDOC in the capacity as a Psychologist, Mental Health Administrator: PREA Compliance Manager. As such, Defendant ASHLEY was acting under color of law. Defendant ASHLEY is being sued in her individual capacity for the challenged conduct.

**RESPONSE: Defendant admits Norine Ashley was employed the IDOC as a Psychologist, Mental Health Administrator: PREA Compliance Manager during relevant times, and admits Norine Ashley acted under color of law.**

13.     At all relevant times to her involvement in this case, and in the capacity of a Psychologist, Mental Health Administrator: PREA Compliance Manager, Defendant ASHLEY was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant ASHLEY promulgated rules, regulations, policies, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief**

**about the truth of the allegations in Paragraph 13.**

14.     At all times relevant to her involvement in this case, Defendant LISA JOHNSON was employed by the IDOC in the capacity as a Back-up to the PREA Compliance Manager.  As such, Defendant JOHNSON was acting under color of law.  Defendant JOHNSON is being sued in her individual capacity for the challenged conduct.

**RESPONSE:  Defendant admits Lisa Johnson was employed the IDOC as a Back-up to the PREA Compliance Manager during relevant times, and admits Lisa Johnson acted under color of law.**

15.     At all times relevant to her involvement in this case, and in the capacity of Backup to the PREA Compliance Manager, Defendant JOHNSON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant JOHNSON promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**RESPONSE:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15.**

16.     At all times relevant to their involvement in this case, PATRICK KEANE and MIKE FUNK, as Agency PREA Coordinators, were responsible for, among other things, developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

**RESPONSE:  Defendant denies that Defendant Keane was the IDOC agency PREA**

Coordinator at all times relevant to this case, and states that Defendant Keane last served in that role on November 13, 2015. Defendant admits that Defendant Funk was PREA Coordinator from approximately November 13, 2015, until approximately June 2016.

Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 16.

17.     At all times relevant to their involvement in this case, and in the capacity of Agency PREA Coordinators, Defendants KEANE and FUNK promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 17.

18.     At all times relevant to their involvement in this case, FELIPE ZAVALA and ALAN PASLEY, as Back-Up Agency PREA Coordinators, were responsible for, among other things, providing assistance to the Agency PREA Coordinators in developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

REPSONSE:  Defendant admits that Defendants Zavala and Pasley were, for a period of time, assigned as Back-Ups to the Agency PREA Coordinator.

Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 18.

19.     At all times relevant to their involvement in this case, and in the capacity of Back-Up Agency PREA Coordinators, Defendants ZAVALA and PASLEY promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

**REPSONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 19.**

20.     On or about December 28, 2015, and at all times relevant to their involvement in this case, Defendants Logan Correctional Center Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA were employed by the IDOC and worked at Logan Correctional Center.  As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities.  Defendants Logan Correctional Center Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA were responsible for, among other things, ensuring the equitable enforcement of rules and regulations promulgated by the Warden during Internal Affairs investigations, including the rules and regulations aimed at investigating sexual assaults by guards and adherence by Logan Correctional Center to the PREA.

**RESPONSE: Defendant admits Defendants Gabor and Delia were employed by the IDOC on or about December 28, 2015, and admits that they were assigned to conduct investigations, including investigations regarding alleged sexual assaults and PREA complaints.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 20.**

21.     On or about December 28, 2015, and at all times relevant to her involvement in this case, Defendant AMY RUDE, L.C.S.W. was employed at Logan Correctional Center in the position of a Social Worker.  As such, Defendant RUDE was acting under color of law and within the scope of her employment and is sued in her individual capacity.  Defendant RUDE was responsible for, among other things, ensuring effective and equitable mental health treatment and mental health classifications of inmates housed at Logan Correctional Center.

**RESPONSE:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21.**

22.     On or about December 28, 2015, and at all times relevant to their involvement in this case, Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY were employed by the IDOC and worked at Logan Correctional Center.  As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities.

**RESPONSE: Defendant admits she was employed by IDOC, admits she worked at Logan Correctional Center, and admits she acted under color of law when she was employed by IDOC.**

**Defendant denies that she currently works for IDOC or that she worked for IDOC after December 15, 2017.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 22.**

23.     Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY were responsible for, among other things, ensuring the control and safety of all inmates housed at Logan Correctional Center, including Plaintiff.

**RESPONSE: Defendant admits she was generally responsible for inmates in a specific housing unit or wing to which she was assigned.**

**Defendant denies that she was personally responsible for the control and safety of all inmates at Logan Correctional Center, including Plaintiff. Defendant denies that she was responsible for Plaintiff's housing unit.**

24.     On or about May of 2016, Defendants SNYDER, LOCKE, and JONES were employed by the IDOC and worked at Decatur Correctional Center.  As such, the Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities.  Defendants SNYDER, LOCKE, and JONES were responsible for, among other things, discipline of inmates and internal affairs investigations at Decatur Correctional Center, including the discipline and investigation of disciplinary infractions alleged against Plaintiff.

**RESPONSE:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24.**

25.     Defendant ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC) is the Illinois state agency responsible for the operation of various correctional facilities throughout the State of Illinois, including Logan Correctional Center and Fox Valley Adult Transition Center. Defendant IDOC is a governmental subdivision of the State of Illinois.

**RESPONSE: Defendant admits IDOC is an agency of the State of Illinois that operates various correctional facilities in Illinois, including Logan Correctional Center and Fox Valley Adult Transition Center.**

## FACTUAL ALLEGATIONS

26.     Plaintiff entered Logan Correctional Center on December 4, 2015.  She had been sentenced to 180 days in the Boot Camp facility (equating to 120 days with good time credits, less time already served).  Her sentence included a provision that if she did not complete Boot Camp, she would face a six year incarceration.  Plaintiff was intent on completing her sentence at Boot Camp in 120 days, without any delay, and returning home to her two young boys.

**RESPONSE:  Defendant admits Plaintiff entered Logan Correctional Center on December 4, 2015.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26.**

27.     Once at Logan Correctional Center, and as part of being placed in "Boot Camp Status," Plaintiff was permitted to change out of the standard prison garb and wear sweatpants and a sweatshirt labeled "Boot Camp."  She, along with other women being sent to Boot Camp, were housed in a unit separate from the general population and were expected to perform all tasks around the prison, such as serve food trays, clean the laundry, clean the units, and generally help out around the prison while waiting for availability at the Boot Camp to open.  Because of their status, the inmates, including Plaintiff, were permitted to leave their cell doors unlocked at all times and come and go throughout the facility as needed, and at the direction of the correctional officers, to complete their tasks.

**RESPONSE:  Defendant lacks knowledge or information sufficient to form a belief**

**about the truth of the allegations in Paragraph 27.**

28.     In and around December of 2015, Defendant KOHLRUS was employed as a Correctional Officer and was assigned to the third shift in Plaintiff's unit. Defendant KOHLRUS initiated contact with Plaintiff. While conducting cell checks, Defendant KOHLRUS would bang his flashlight against Plaintiff's cell door, and instruct Plaintiff to meet him at the cell door to talk. On at least one occasion, Defendant KOHLRUS instructed Plaintiff to undress so that he could watch.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28.**

29.     On one occasion, Defendant KOHLRUS explained to Plaintiff that because he was being reassigned to a different area of the prison where they would not see each other, he had a plan to meet her in the laundry room during his shift.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29.**

30.     Defendant KOLHRUS' plan to meet Plaintiff in the laundry room during his shift necessitated the knowledge and agreement of Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAP, BILLINGTON, and KEARNEY who were aware of his whereabouts in the prison during his shift and permitted his plan with Plaintiff to unfold without interruption.

**RESPONSE: Defendant denies the allegations in Paragraph 30.**

31.     Following Defendant KOHLRUS' directions, Plaintiff met with him in the laundry room on December 28, 2015. When Defendant KOHLRUS made sexual advances

towards her, Plaintiff became scared and nervous.  She ran back to her cell.

**RESPONSE: Defendant admits that an investigation conducted by the Illinois Department of Corrections contained statements by Plaintiff and Defendant Kohlrus that indicated that Plaintiff met Defendant Kohlrus in the laundry room on December 28, 2015, that the two engaged in sexual activity, and that after approximately two minutes Plaintiff reported that she returned to her cell because she feared getting caught.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 31.**

32.    Defendant KOHLRUS followed Plaintiff back to her cell.  He told her, "I have a plan" and "I want you to come back down," or words to that effect.  Plaintiff complied.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32.**

33.    While back in the laundry room, Plaintiff could see Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY working in the "bubble" or control tower.  At no point did any of these Defendants intervene and/or stop Defendant KOHLRUS' actions.

**RESPONSE:  Defendant denies the allegations in Paragraph 33.**

34.    Defendant KOHLRUS engaged Plaintiff in non-consensual sexual acts. Afterwards he said words to the effect of "good girl" and reminded Plaintiff that she would not go to boot camp if she told anyone.

**RESPONSE: Defendant admits that an investigation conducted by the Illinois Department of Corrections contained statements by Plaintiff and Defendant Kohlrus that**

indicated that Plaintiff met Defendant Kohlrus in the laundry room on December 28, 2015, and that the two engaged in sexual activity.

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 34.**

35.     Plaintiff was unprepared for what had occurred in the laundry room.  She confided in the nurse at Logan Correctional Center, and then later the Medical Director.  Plaintiff consented to a rape kit.

**RESPONSE:  Defendant admits Plaintiff consented to a rape kit procedure at Logan Correctional Center.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 35.**

36.     Plaintiff was then instructed to speak with Logan Correctional Center Case Investigator JEFF GABOR and Logan Correctional Center Chief of Investigations and Intelligence MARK DELIA, who yelled and threatened her that she was going to get hit with extra charges if the rape kit did not come back positive.  Scared, Plaintiff told the Defendants GABOR and DELIA that she had consented to Defendant KOHLRUS' actions.

**RESPONSE:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36.**

37.     Based on her reporting, Plaintiff was then placed in isolated.  At no point during her time in isolation was she afforded the opportunity to challenge her confinement.

**RESPONSE:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37.**

38.     The isolation unit was intense.  Plaintiff—although not suicidal—was confined to

a cell alongside women who were placed on suicide watch. The women had obvious mental health problems and, with cells that you could see straight into, Plaintiff had no privacy from their experiences.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38.**

39.     Plaintiff did not forget that she was sentenced to Boot Camp, and remained focused on getting home to her children. She was persistent in asking when she would be let out of segregation, but received no information, and no paperwork, in regards to her continued detention or the Internal Affairs Investigation into the rape.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39.**

40.     Plaintiff was offered anti-anxiety medication while in segregation. At first she refused, but the stress of the unit and the lack of information regarding her situation bore down on her. Eventually she capitulated and took the anti-anxiety medication.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40.**

41.     Once Plaintiff accepted the anti-anxiety medication, she was then informed by Defendants that she was no longer eligible for Boot Camp due to her mental health status.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41.**

42.     Plaintiff was forced by Defendants GABOR and DELIA to sign a statement that she would not discuss the Internal Affairs Investigation relating to Defendant KOHLRUS' actions—despite not being provided with any information on the investigation, including

whether the investigation concluded and what the findings were.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42.**

43.    Plaintiff was sent to Decatur Correctional Center on January 21, 2016.  Plaintiff was disciplined at Decatur Correctional Center by Defendants SNYDER, LOCKE, and JONES after allegedly discussing the incident.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43.**

44.    Plaintiff left Decatur Correctional Center on July 12, 2017, and is currently housed at Fox Valley Adult Transition Center.

**RESPONSE: Defendant admits Plaintiff is currently housed at Fox Valley Adult Transition Center. Defendant denies the remaining allegations in Paragraph 44.**

**Count I**
**42 U.S.C. § 1983 – Excessive Force (Eighth Amendment)**
**Against Defendant KOHLRUS**

45.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

46.    As described more fully above, Defendant KOHLRUS used force against Plaintiff.  That force, in the form of a rape, was objectively unreasonable and meant to degrade and humiliate Plaintiff.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46.**

47.    In using force against Plaintiff, Defendant KOHLRUS used extreme or excessive

cruelty toward her for the purpose of causing harm, including degradation and humiliation. The actions by Defendant KOHLRUS were not in a good faith effort to maintain or restore security or discipline.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47.**

48.     Alternatively, Defendant KOHLRUS knew that using force presented a risk of harm to Plaintiff, but recklessly disregarded that risk and Plaintiff's emotional and physical safety by failing to take reasonable measures to minimize the risk of harm.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48.**

49.     As a direct and proximate result of Defendant's misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendant denies violating any of Plaintiff's rights. As is concerns Defendant Kohlrus, Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 49.**

**Count II**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**August Defendant KOHLRUS**

50.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

51.     As described more fully above, Defendant KOHLRUS committed a serious battery, including rape, against Plaintiff under color of state law. In so doing, Defendant KOHLRUS denied Plaintiff due process of law in that he engaged in arbitrary government action

that deprived her of her liberty, violated her right to bodily integrity, and was so malfeasant as to shock the conscience.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51.**

52. Defendant KOHLRUS' misconduct was undertaken with malice, willfulness, and/or reckless indifference to Plaintiff's rights and was objectively unreasonable.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52.**

53. Defendant KOHLRUS' actions as described more fully above were committed within the scope of his employment and under color of law.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53.**

## Count III
### 42 U.S.C. § 1983 – Deliberate Indifference
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY**

54. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

55. Defendant KOHLRUS' rape of Plaintiff was not an isolated incident at Logan Correctional Center and Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KENAE, FUNK, ZAVALA, and PASLEY were each on notice of the custom, policies, and practices at Logan Correctional Center that permitted this type of misconduct to flourish.

**RESPONSE:  Defendant denies being aware of any such custom, policy, or procedure. Defendant lacks knowledge or information sufficient to form a belief about the truth**

of the remaining allegations in Paragraph 55.

56.     Specifically, in December 2015, and for a period of time prior thereto, Defendant BRANNON, as Warden of Logan Correctional Center, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Logan Correctional Center.  In December 2015, and for a period of time prior thereto, Defendant BRANNON, as Warden of Logan Correctional Center, knew or should have known of a widespread practice by IDOC employees at Logan Correctional Center who engaged in guard-on-inmate sexual assaults, by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

**RESPONSE: Defendant admits that, during her time as Warden of Logan Correctional Center, Defendant Brannon was responsible, together with others, for the creation, implementation, oversight, and supervision of certain policies and procedures followed by IDOC employees at Logan Correctional Center.**

**Defendant denies being aware of any such widespread practice.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 56.**

57.     In December 2015, and for a period of time prior thereto, Defendants KEANE and FUNK, as Agency PREA Coordinators, and ZAVALA and PASLEY, as Back-Up Agency PREA Coordinators, were responsible for the creation, implementation, oversight, and supervision of the statewide policies and procedures followed by IDOC employees, including those employees at Logan Correctional Center that related to PREA violations.  In December 2015, and for a period of time prior thereto, Defendants KEANE, FUNK, ZAVALA, and

PASLEY knew or should have known of a widespread practice by IDOC employees, including employees at Logan Correctional Center, who engaged in guard-on-inmate sexual assaults, including rapes, by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

**RESPONSE: Defendant denies being aware of any such widespread practice.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 57.**

58.     In December 2015, and for a period of time prior thereto, Defendant CHARRON, as PREA Compliance Manager at Logan Correctional Center, Defendant ASHLEY, as Mental Health Administrator: PREA Compliance Manager at Logan Correctional Center, and Defendant JOHNSON, as Back-Up to the PREA Compliance Manager at Logan Correctional Center were responsible for the creation, implementation, oversight, and supervision of policies and procedures followed by IDOC employees at Logan Correctional Center that related to PREA violations. In December 2015, and for a period of time prior thereto, Defendants CHARRON, ASHLEY, and JOHNSON knew or should have known of a widespread practice by IDOC employees at Logan Correctional Center who engaged in guard-on-inmate sexual assaults, including rapes, by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

**RESPONSE: Defendant denies being aware of any such widespread practice.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 58.**

59. The above-described widespread practice, so well-settled as to constitute a de facto policy of Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY was able to exist and thrive because Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY, who had authority over the same, exhibited deliberate indifference to the problem. Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY manifested deliberate indifference to these constitutional violations by failing to take reasonable measures to remedy these violations. Among other things, Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY failed to adequately train, supervise, control, and discipline, including terminate, IDOC employees who engaged, or were accused of engaging in, staff on inmate assaults, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY directed, knew about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's constitutional rights, and violated Plaintiffs rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

**RESPONSE: Defendant denies being aware of any such widespread practice.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 59.**

60. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendant denies violating Plaintiff's rights.**

**Defendant lacks knowledge or information sufficient to form a belief about the truth**

**of the remaining allegations in Paragraph 60.**

**Count IV**
**42 U.S.C. § 1983 – Failure to Intervene**
**Against Defendants WOOLFOLK, MITCHEY, BARRY, LEMON, and ADAMS, AHART,**
**WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and**
**KEARNEY**

61.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this**

**Complaint as if fully restated herein.**

62.     As described more fully above, Defendants Logan Correctional Officers

WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON,

RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY had a reasonable

opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they

been so inclined, but failed to do so.

**RESPONSE:  Defendant denies the allegations in Paragraph 62.**

63.     Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY,

LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP,

BILLINGTON, and KEARNEY knew of a substantial risk of harm to Plaintiff's safety, and

could see or had the opportunity to see the harm occurring to Plaintiff as she was raped, or knew

that the rape was going to occur, but consciously disregarded the risk Plaintiff was experiencing

by failing to take reasonable steps to prevent the harm from occurring, or stopping it as it

occurred.

**RESPONSE:  Defendant denies the allegations in Paragraph 63.**

64.     Defendants Logan Correctional Officers WOOLFOLK, MITCHEY, BARRY,

LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP,

BILLINGTON, and KEARNEY failure to act was intentional, done with malice, and /or done with reckless indifferent to Plaintiff's rights.

**RESPONSE: Defendant denies the allegations in Paragraph 64.**

65.     As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendant denies the allegations in Paragraph 65.**

**Count V**
**42 U.S.C. § 1983 – Conspiracy**
**Against Defendants KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, and ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY**

66.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

67.     Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY reached an agreement among themselves to deprive Plaintiff of her constitutional rights and to protect one another from liability for depriving Plaintiff of her rights, all as described in the various paragraphs of this Complaint.

**RESPONSE: Defendant denies the allegations in Paragraph 67.**

68.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**RESPONSE: Defendant denies the allegations in Paragraph 68.**

69.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**RESPONSE: Defendant denies the allegations in Paragraph 69.**

70.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated and she suffered injuries, including emotional distress.

**RESPONSE: Defendant denies the allegations in Paragraph 70.**

71.     Plaintiff's injuries were caused by Defendants Logan Correctional Officers KOHLRUS, WOOLFOLK, MITCHEY, BARRY, LEMON, ADAMS, AHART, WHELTON, JACKSON, RIVERA, ROBERTS, DAVIS, SAPP, BILLINGTON, and KEARNEY who were all employees of the IDOC at Logan Correctional Center and who acted pursuant to the policies and practices of Logan Correctional Center.

**RESPONSE: Defendant denies the allegations in Paragraph 71.**

**Count VI**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, RUDE, GABOR and**
**DELIA**

72.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

73.     As stated more fully above, following the rape and Plaintiff's subsequent report, Plaintiff was placed in isolation and denied Boot Camp status. The conditions that Plaintiff experienced in isolation, including her eventual denial of Boot Camp status, were atypical and significantly imposed such a hardship on her that the risk of having to endure those conditions triggered a liberty interest requiring due process.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73.**

74.     Defendants failed to provide Plaintiff with due process before depriving her of

that liberty interest. Specifically, Plaintiff had no hearing and no opportunity to dispute her continued confinement or denial from Boot Camp.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74.**

75.     The misconduct committed by Defendants was not random and unauthorized, but instead was the foreseeable result of the policies and practices of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendants RUDE, GABOR and DELIA.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75.**

76.     Specifically, in December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, were responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Logan Correctional Center as they related to PREA violations and staff-on-inmate violence, including the investigation and discipline of inmates who make such reports. In December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON knew or should have known of a widespread practice at Logan Correctional Center that limited inmates' due process rights who made reports of PREA violations and staff-on-inmate violence by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, internal affairs investigatory reports, meetings, and lawsuits.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76.**

77.     The above-described widespread practice, so well-settled as to constitute a de

facto policy of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON was able to exist and thrive through the Defendants RUDE, GABOR and DELIA because Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, who had authority over the same, exhibited deliberate indifference to the problem. Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON manifested deliberate indifference to these constitutional violations taken by the Defendants RUDE, GABOR and DELIA by failing to take reasonable measures to remedy these violations. Among other things, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON failed to adequately train, supervise, control, and discipline, including terminate, the Defendants RUDE, GABOR and DELIA who engaged, or were accused of engaging in, due process violations, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON directed, knew about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's constitutional rights, and violated Plaintiffs rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77.**

78.     As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendant denies violating Plaintiff's rights. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 78.**

**Count VII**
**42 U.S.C. § 1983 – Retaliation (First Amendment)**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, GABOR,**
**DELIA, SNYDER, LOCKE, and JONES**

79. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

80. Plaintiff made statements about her sexual assault to prisoners and prison staff. These statements addressed a matter of public concern and were protected by the First Amendment.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 80.**

81. As a result of those statements Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendants GABOR and DELIA retaliated against Plaintiff, placing her in segregation and punishing her. Plaintiff's statements were the cause and/or a motivating factor in the Defendants' decision to take the retaliatory actions.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 81.**

82. Defendants' retaliation is likely to deter First Amendment activity by Plaintiff, or a person in Plaintiff's position, in the future.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82.**

83. Plaintiff suffered a further deprivation of her Constitutional rights that deterred future First Amendment activity when she was forced by Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendants GABOR and DELIA to sign an agreement stating she would not discuss the rape committed by Defendant KOHLRUS.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief**

**about the truth of the allegations in Paragraph 83.**

84. Despite being forced to sign an agreement to the contrary, Plaintiff's right to discuss Defendant KOHLRUS' sexual assault against her is a protected activity under the First Amendment.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 84.**

85. Plaintiff further suffered a deprivation of her Constitutional rights that deterred future First Amendment activity when she was punished for allegedly discussing the assault by Defendants SNYDER, LOCKE, and JONES while incarcerated at Decatur Correctional Center.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 85.**

86. As a result of Defendants' misconduct Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**RESPONSE: Defendant denies violating Plaintiff's rights. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 86.**

**Count VIII**
**42 U.S.C. § 12132 – Americans with Disabilities Act Claim**
**Against Defendant IDOC**

87. Title II of the Americans with Disabilities Act prohibits exclusion of qualified individuals from participation in services, programs, or activities by public entities like Defendant IDOC.

**RESPONSE: Defendant admits the allegations contained in Paragraph 87.**

88. At all times relevant to her claims in this case, Plaintiff was a qualified individual

with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 88.**

89.     The claims under the ADA are brought against Defendant IDOC as a department of the State of Illinois.

**RESPONSE: Defendant admits the Illinois Department of Corrections is an agency of the State of Illinois, and admits Plaintiff brings claims under the ADA. Defendant denies any violation of the ADA.**

90.     Defendant IDOC is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

**RESPONSE: Defendant admits the allegations contained in Paragraph 90.**

91.     Plaintiff was excluded and / or discriminated from participating in, and was denied the benefits of, the Impact Incarceration Program ("Boot Camp") due to her disability.

**RESPONSE: Defendant denies the allegations in Paragraph 91.**

92.     Plaintiff's exclusion and/or discrimination from the Impact Incarceration Program was a direct and proximate result of her disability.

**RESPONSE: Defendant denies the allegations in Paragraph 92.**

**Count IX**
**29 U.S.C. § 794(a)—Rehabilitation Act Claim**
**Against Defendant IDOC**

93.     For any program or activity receiving federal financial assistance, the Rehabilitation Act prohibits a qualified individual with a disability from being excluded from participating in, being denied the benefits of, or being subjected to discrimination in any such program or activity.

**RESPONSE: Defendant admits the allegations contained in Paragraph 93.**

94.     Plaintiff is a qualified "individual with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 94.**

95.     At all times relevant to Plaintiff's claims, Defendant IDOC, as a department of the State of Illinois, received "[f]ederal financial assistance" within the meaning of 29 U.S.C. § 794(a).

**RESPONSE:  Defendant admits the allegations contained in Paragraph 95.**

96.     The operations of Defendant IDOC, including the Impact Incarceration Program, are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B).

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 96.**

97.     Plaintiff was excluded and / or discriminated from participating in, and was denied the benefits of, the Impact Incarceration Program ("Boot Camp") due to her mental health needs, including requiring psychotropic medication.

**RESPONSE:  Defendant denies the allegations in Paragraph 97.**

98.     Plaintiff's exclusion and/or discrimination from the Impact Incarceration Program was a direct and proximate result of her disability.

**RESPONSE:  Defendant denies the allegations in Paragraph 98.**

**Count X**
**Illinois State Law – Assault & Battery**
**Against Defendant KOHLRUS**

99.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

100.     Pleading in the alternative, and as described more fully above, Defendant KOHLRUS made physical contact with Plaintiff without valid cause. That physical contact was offensive and harmful.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 100.**

101.     As described more fully above, Defendant KOHLRUS intended to harm and/or frighten Plaintiff without valid cause. His actions did in fact cause Plaintiff fear and apprehension.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 101.**

102.     As a direct and proximate result of Defendant KOHLRUS' conduct, Plaintiff experienced injuries, including emotional distress.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 102.**

**Count XI**
**Illinois State Law – Sexual Abuse**
**Against Defendant KOHLRUS**

103.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

104.     In the manner described more fully above, Defendant KOHLRUS' actions were done intentionally, willfully and wantonly, or with such reckless disregard for their natural

consequences as to constitute the tort of sexual abuse under the laws and constitution of the State of Illinois

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 104.**

105.    As a direct and proximate result of Defendant KOHLRUS' conduct, Plaintiff experienced injuries, including emotional distress.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 105.**

**Count XII**
**Illinois State Law – Intentional Infliction of Emotional Distress**
**Against Defendant KOHLRUS**

106.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

**RESPONSE: Defendant incorporates her responses to each paragraph of this Complaint as if fully restated herein.**

107.    Pleading in the alternative, and in the manner described more fully above, Plaintiff Defendant KOHLRUS engaged in extreme and outrageous conduct when he raped Plaintiff in the laundry room at Logan Correctional Center.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 107.**

108.    Defendant KOHLRUS' actions as set forth above were rooted in an abuse of power or authority.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 108.**

109.    Defendant KOHLRUS' actions as set forth above were undertaken intentionally

or with knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 109.**

110. Defendant KOHLRUS' actions, as set forth above, were undertaken intentionally, with malice, and/or reckless indifference to Plaintiff's rights.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 110.**

## REQUEST FOR RELIEF

**RESPONSE: Defendant denies Plaintiff is entitled to any relief whatsoever.**

## JURY DEMAND

**RESPONSE: Defendant requests a trial by jury on all triable issues.**

## AFFIRMATIVE DEFENSES

1.     At all times relevant herein, Defendant acted in good faith in the performance of her official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant is, therefore, protected from suit by the doctrine of qualified immunity.

2.     Plaintiff is a person incarcerated within the Illinois Department of Corrections at the time of filing this lawsuit. Plaintiff has failed to exhaust her administrative remedies regarding the allegations in this lawsuit. Therefore, her claims are barred by the Prison Litigation Reform Act. 42 U.S.C. § 1997; *See also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

WHEREFORE, for the above and foregoing reasons, Defendant respectfully requests this honorable Court deny Plaintiff any relief whatsoever and enter judgment in her favor.

Respectfully submitted,

JASMIN WOOLFOLK,

Defendant,

LISA MADIGAN, Illinois Attorney General,

Jeremy C. Tyrrell, #6321649
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 785-4555 Phone
(217) 524-5091 Fax
jtyrrell@atg.state.il.us

Attorney for Defendant,

By:  s/Jeremy C. Tyrrell
     Jeremy C. Tyrrell
     Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JACQUELINE FARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 17-3279-SEM-TSH |
| | ) | |
| ERIC KOHL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, the foregoing document, *Defendant Woolfolk's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Julie Marie Goodwin | julie@loevy.com |
| Sarah C. Grady | sarah@loevy.com |
| Sara Mayo Vig | sara@vig-law.com |
| Karen L. McNaught | kmcnaught@cassiday.com |

Respectfully Submitted,

  s/Jeremy C. Tyrrell
Jeremy C. Tyrrell, #6321649
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 785-4555 Phone
(217) 524-5091 Fax
E-Mail:  jtyrrell@atg.state.il.us