E-FILED
Wednesday, 18 December, 2019  11:07:49 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JACQUELINE FARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17 C 3279 |
| | ) | |
| ERIK KOHLRUS; CHRISTINE BRANNON; CLARA | ) | |
| CHARRON; NORINE ASHLEY; LISA JOHNSON; | ) | |
| PATRICK KEANE; MIKE FUNK; FELIPE ZAVALA; | ) | Hon. Sue E. Myerscough |
| ALAN PASLEY; ALEX ADAMS; LAURA JACKSON; | ) | |
| JEFF GABOR; TRINA SNYDER; ANGELA LOCKE; | ) | |
| and the ILLINOIS DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## [PROPOSED] SECOND AMENDED COMPLAINT

Now comes Plaintiff, JACQUELINE FARRIS, by and through her attorneys, LOEVY &

LOEVY, and complaining of Defendants ERIK KOHLRUS, CHRISTINE BRANNON, CLARA

CHARRON, NORINE ASHLEY, LISA JOHNSON, PATRICK KEANE, MIKE FUNK,

FELIPE ZAVALA, ALAN PASLEY, ALEX ADAMS, LAURA JACKSON, JEFF GABOR,

TRINA SNYDER, ANGELA LOCKE, and ILLINOIS DEPARTMENT OF CORRECTIONS, as

follows:

### Introduction

1.     On December 28, 2015, Plaintiff was raped by a correctional officer at Logan

Correctional Center. Her rape occurred under the noses of several correctional staff who saw the

sexual assault and did nothing. In fact, there is a widespread practice at Logan Correctional

Center of failing to intervene to prevent sexual assaults and sexual harassment against prisoners

at Logan, a practice which emboldened Plaintiff's rapist.

2.      Plaintiff reported to medical staff at the prison that she had been raped. But rather than take Plaintiff's complaint seriously, the investigators to whom the complaint was referred threatened Plaintiff and retaliated against her.

3.      Accordingly, Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## Jurisdiction and Venue

4.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

5.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief Defendants reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

## Parties

6.      In December of 2015, and at all times relevant to the events at issue in this case, Plaintiff Jacqueline FARRIS, was in the custody of the Illinois Department of Corrections (IDOC). She was incarcerated at Logan Correctional Center in December 2015, and then transferred to Decatur Correctional Center in January 2016.

7.      At all times relevant to her involvement in this case, Defendant CHRISTINE BRANNON was employed by the IDOC in the capacity of Warden of Logan Correctional Center. As such, Defendant BRANNON was acting under color of law. Defendant BRANNON is being sued in her individual capacity for the challenged conduct.

8.      At all times relevant to her involvement in this case, Defendant BRANNON was responsible for the organization and supervision of Logan Correctional Center. In that capacity, and at all times relevant to her involvement in this case, Defendant BRANNON promulgated

rules, regulations, polices, and procedures as Warden of Logan Correctional Center to guarantee the reasonable safety of inmates at the facility. Defendant BRANNON'S rules, regulations, policies and procedures were implemented by and through the Correctional Officers and Internal Affairs Investigators at Logan Correctional Center.  As Warden, Defendant BRANNON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing staff on inmate violence, such as sexual assaults by guards and the adherence of each facility to the Prison Rape Elimination Act ("PREA").

9.      Additionally, at all times relevant to the events at issue in this case, Defendant BRANNON was responsible for the hiring, supervision, training, and retention of Correctional Officers employed by the Illinois Department of Corrections and assigned to Logan Correctional Center, including Defendants Logan Correctional Officers KOHLRUS, ADAMS, and JACKSON.

10.      At all times relevant to her involvement in this case, Defendant CLARA CHARRON was employed by the IDOC in the capacity as the PREA Compliance Manager at Logan Correctional Center. As such, Defendant CHARRON was acting under color of law. Defendant CHARRON is being sued in her individual capacity for the challenged conduct.

11.      At all times relevant to her involvement in this case, and in the capacity of PREA Compliance Manager, Defendant CHARRON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant CHARRON promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

12.     At all times relevant to her involvement in this case, Defendant NORINE ASHLEY was employed by the IDOC in the capacity as a Psychologist, Mental Health Administrator: PREA Compliance Manager. As such, Defendant ASHLEY was acting under color of law. Defendant ASHLEY is being sued in her individual capacity for the challenged conduct.

13.     At all times relevant to her involvement in this case, and in the capacity of a Psychologist, Mental Health Administrator: PREA Compliance Manager, Defendant ASHLEY was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant ASHLEY promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

14.     At all times relevant to her involvement in this case, Defendant LISA JOHNSON was employed by the IDOC in the capacity as a Back-up to the PREA Compliance Manager. As such, Defendant JOHNSON was acting under color of law. Defendant JOHNSON is being sued in her individual capacity for the challenged conduct.

15.     At all times relevant to her involvement in this case, and in the capacity of Back-up to the PREA Compliance Manager, Defendant JOHNSON was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing sexual assaults by guards and adherence by the facility to the PREA. Defendant JOHNSON promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional

Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

16.     At all times relevant to their involvement in this case, PATRICK KEANE and MIKE FUNK, as Agency PREA Coordinators, were responsible for, among other things, developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

17.     At all times relevant to their involvement in this case, and in the capacity of Agency PREA Coordinators, Defendants KEANE and FUNK promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

18.     At all times relevant to their involvement in this case, FELIPE ZAVALA and ALAN PASLEY, as Back-Up Agency PREA Coordinators, were responsible for, among other things, providing assistance to the Agency PREA Coordinators in developing, implementing, and overseeing Illinois Department of Corrections efforts to comply with PREA standards in all of its facilities, including Logan Correctional Center.

19.     At all times relevant to their involvement in this case, and in the capacity of Back-Up Agency PREA Coordinators, Defendants ZAVALA and PASLEY promulgated rules, regulations, polices, and procedures in regards to PREA which were implemented by the facilities in IDOC, including the Warden of Logan Correctional Center, as well as other PREA Compliance Managers, Correctional Officers at Logan Correctional Center, and Internal Affairs Investigators at Logan Correctional Center.

20.     Defendants ZAVALA and PASLEY were also responsible, during their tenure with the IDOC, for providing training to IDOC employees, including but not limited to Defendants.

21.     On or about December 28, 2015, and at all times relevant to his involvement in this case, Defendant Logan Correctional Center Case Investigator JEFF GABOR was employed by the IDOC and worked at Logan Correctional Center. As such, this Defendant was acting under color of law and within the scope of his employment with IDOC and is sued in his individual capacity. Defendant Logan Correctional Center Case Investigator JEFF GABOR was responsible for, among other things, ensuring the equitable enforcement of rules and regulations promulgated by the Warden during Internal Affairs investigations, including the rules and regulations aimed at investigating sexual assaults by guards and adherence by Logan Correctional Center to the PREA.

22.     On or about December 28, 2015, and at all times relevant to their involvement in this case, Defendants Logan Correctional Officers KOHLRUS, ADAMS, and JACKSON were employed by the IDOC and worked at Logan Correctional Center. As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities.

23.     Defendants Logan Correctional Officers KOHLRUS, ADAMS, and JACKSON were responsible for, among other things, ensuring the control and safety of all inmates housed at Logan Correctional Center, including Plaintiff.

24.     At all times relevant to her involvement in the case, Defendant LOCKE was employed by the IDOC. For a period of time relevant to Plaintiff's claims herein, Defendant LOCKE was employed as Acting Warden at Logan Correctional Center. As such, Defendant

LOCKE was acting under color of law. Defendant LOCKE is being sued in her individual capacity for the challenged conduct.

25.     In her role as Acting Warden at Logan Correctional Center, Defendant LOCKE was responsible for the organization and supervision of Logan Correctional Center. In that capacity, and at the relevant time that Logan Correctional Center switched to an all-female prisoner population, Defendant LOCKE promulgated rules, regulations, polices, and procedures as Warden of Logan Correctional Center  to guarantee the reasonable safety of inmates at the facility. Defendant LOCKE'S rules, regulations, policies and procedures were implemented by and through the Correctional Officers and Internal Affairs Investigators at Logan Correctional Center.  As Acting Warden, Defendant LOCKE was responsible for, among other things, ensuring the reasonable safety of inmates, including preventing staff on inmate violence, such as sexual assaults by guards and the adherence of each facility to the Prison Rape Elimination Act ("PREA")

26.     On or about May of 2016, Defendant SNYDER, as well as Defendant LOCKE, were employed by the IDOC and worked at Decatur Correctional Center. As such, these Defendants were acting under color of law and within the scope of their employment with IDOC and are sued in their individual capacities. During this time, Defendants SNYDER and LOCKE were responsible for, among other things, discipline of inmates and internal affairs investigations at Decatur Correctional Center, including the discipline and investigation of disciplinary infractions alleged against Plaintiff.

27.     Defendant ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC) is the Illinois state agency responsible for the operation of various correctional facilities throughout the

State of Illinois, including Logan Correctional Center and Fox Valley Adult Transition Center. Defendant IDOC is a governmental subdivision of the State of Illinois.

**Factual Allegations**

28.     Plaintiff entered Logan Correctional Center on December 4, 2015. She had been sentenced to 180 days in the Boot Camp facility (equating to 120 days with good time credits, less time already served). Her sentence included a provision that if she did not complete Boot Camp, she would face a six year incarceration. Plaintiff was intent on completing her sentence at Boot Camp in 120 days, without any delay, and returning home to her two young boys.

29.     Once at Logan Correctional Center, and as part of being placed in "Boot Camp Status," Plaintiff was permitted to change out of the standard prison garb and wear sweatpants and a sweatshirt labeled "Boot Camp." She, along with other women being sent to Boot Camp, were housed in a unit separate from the general population and were expected to perform all tasks around the prison, such as serve food trays, clean the laundry, clean the units, and generally help out around the prison while waiting for availability at the Boot Camp to open. Because of their status, the inmates, including Plaintiff, were permitted to leave their cell doors unlocked at all times and come and go throughout the facility as needed, and at the direction of the correctional officers, to complete their tasks.

30.     In and around December of 2015, Defendant KOHLRUS was employed as a Correctional Officer and was assigned to the third shift in Plaintiff's unit. Defendant KOHLRUS initiated contact with Plaintiff. While conducting cell checks, Defendant KOHLRUS would bang his flashlight against Plaintiff's cell door, and instruct Plaintiff to meet him at the cell door to talk. On at least one occasion, Defendant KOHLRUS instructed Plaintiff to undress so that he could watch.

31.     On one occasion, Defendant KOHLRUS explained to Plaintiff that because he was being reassigned to a different area of the prison where they would not see each other, he had a plan to meet her in the laundry room during his shift.

32.     Defendant KOHLRUS's plan to meet Plaintiff in the laundry room during his shift necessitated the knowledge and agreement of Defendant Logan Correctional Officer ADAMS, who was aware of both FARRIS's and KOHLRUS's whereabouts in the prison during his shift and permitted KOHLRUS's plan with Plaintiff to unfold without interruption.

33.     Following Defendant KOHLRUS's directions, Plaintiff met with him in the laundry room on December 28, 2015. When Defendant KOHLRUS made sexual advances towards her, Plaintiff became scared and nervous. She ran back to her cell.

34.     Defendant KOHLRUS followed Plaintiff back to her cell. He told her, "I have a plan" and "I want you to come back down," or words to that effect. Plaintiff complied.

35.     While back in the laundry room, Plaintiff could see Defendant ADAMS working in the "bubble" or control room. At no point did Defendant ADAMS intervene and/or stop Defendant KOHLRUS's actions.

36.      Defendant KOHLRUS engaged Plaintiff in non-consensual sexual acts. Afterwards he said words to the effect of "good girl" and reminded Plaintiff that she would not go to boot camp if she told anyone.

37.     Surveillance cameras in Logan Correctional Center captured KOHLRUS and Plaintiff during the early morning hours of December 28, 2015, in the hallways and common areas of B wing in Housing Unit 15, including the walk to and from the laundry room where Defendant KOHLRUS raped Plaintiff.

38.     Defendants BRANNON, CHARRON, JOHNSON, ASHLEY, KEANE, FUNK, ZAVALA, PASLEY, and GABOR failed to preserve this video and/or photographic evidence despite their obligation to do so.

39.     Plaintiff was unprepared for what had occurred in the laundry room. A few hours after her rape, she confided in the nurse at Logan Correctional Center, and then later the Medical Director. Plaintiff consented to a rape kit.

40.     Plaintiff was then instructed to speak with Logan Correctional Center Case Investigator JEFF GABOR, who yelled and threatened her that she was going to get hit with extra charges if the rape kit did not come back positive.  Scared, Plaintiff told Defendant GABOR that she had consented to Defendant KOHLRUS' actions.

41.     Based on her reporting, Plaintiff was then placed on restricted housing. At no point during her time in isolation was she afforded the opportunity to challenge her confinement.

42.     The restricted housing Plaintiff was forced to suffer was intense. Plaintiff—although not suicidal—was confined to a cell alongside women who were placed on suicide watch. The women had obvious mental health problems and, with cells that you could see straight into, Plaintiff had no privacy from their experiences.

43.     Plaintiff did not forget that she was sentenced to Boot Camp, and remained focused on getting home to her children. She was persistent in asking when she would be let out of segregation, but received no information, and no paperwork, in regards to her continued detention or the Internal Affairs Investigation into the rape.

44.     Plaintiff was offered anti-anxiety medication while in segregation. At first she refused, but the stress of the unit and the lack of information regarding her situation bore down on her. Eventually she capitulated and took the anti-anxiety medication.

45. Once Plaintiff accepted the anti-anxiety medication, she was then informed by Defendants that she was no longer eligible for Boot Camp due to her mental health status.

46. Plaintiff was forced by Defendants to sign a statement that she would not discuss the Internal Affairs Investigation relating to Defendant KOHLRUS's actions—despite not being provided with any information on the investigation, including whether the investigation concluded and what the findings were.

47. Plaintiff was sent to Decatur Correctional Center on January 21, 2016. Plaintiff was disciplined at Decatur Correctional Center by Defendants SNYDER and LOCKE after allegedly discussing the incident.

### Count I
### 42 U.S.C. § 1983 – Excessive Force (Eighth Amendment)
### Against Defendant KOHLRUS

48. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

49. As described more fully above, Defendant KOHLRUS used force against Plaintiff. That force, in the form of a rape, was objectively unreasonable and meant to degrade and humiliate Plaintiff.

50. In using force against Plaintiff, Defendant KOHLRUS used extreme or excessive cruelty toward her for the purpose of causing harm, including degradation and humiliation. The actions by Defendant KOHLRUS were not in a good faith effort to maintain or restore security or discipline.

51. Alternatively, Defendant KOHLRUS knew that using force presented a risk of harm to Plaintiff, but recklessly disregarded that risk and Plaintiff's emotional and physical safety by failing to take reasonable measures to minimize the risk of harm.

52.     As a direct and proximate result of Defendant's misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**Count II**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**Against Defendant KOHLRUS**

53.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

54.     As described more fully above, Defendant KOHLRUS committed a serious battery, including rape, against Plaintiff under color of state law. In so doing, Defendant KOHLRUS denied Plaintiff due process of law in that he engaged in arbitrary government action that deprived her of her liberty, violated her right to bodily integrity, and was so malfeasant as to shock the conscience.

55.     Defendant KOHLRUS' misconduct was undertaken with malice, willfulness, and/or reckless indifference to Plaintiff's rights and was objectively unreasonable.

56.     Defendant KOHLRUS' actions as described more fully above were committed within the scope of his employment and under color of law.

**Count III**
**42 U.S.C. § 1983 – Deliberate Indifference**
**Against Defendants BRANNON, LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE,**
**FUNK, ZAVALA, and PASLEY**

57.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

58.     Defendant KOHLRUS' rape of Plaintiff was not an isolated incident at Logan Correctional Center and Defendants BRANNON, LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY were each on notice of the custom, policies, and practices at Logan Correctional Center that permitted this type of misconduct to flourish.

59.     Specifically, in December 2015, and for a period of time prior thereto, Defendants LOCKE and BRANNON, as Wardens of Logan Correctional Center, was responsible for the

creation, implementation, oversight, and supervision of all training, policies, and procedures followed by IDOC employees at Logan Correctional Center. In December 2015, and for a period of time prior thereto, Defendants LOCKE and BRANNON, as Wardens of Logan Correctional Center, knew or should have known of a widespread practice by IDOC employees at Logan Correctional Center who engaged in guard-on-inmate sexual assaults, by way of direct reporting and internal investigations, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

60.     In December 2015, and for a period of time prior thereto, Defendants KEANE and FUNK, as Agency PREA Coordinators, and ZAVALA and PASLEY, as Back-Up Agency PREA Coordinators and IDOC employees responsible for creating and providing training to IDOC employees, were responsible for the creation, implementation, oversight, and supervision of the statewide training, policies, and procedures followed by IDOC employees, including those employees at Logan Correctional Center that related to PREA violations. In December 2015, and for a period of time prior thereto, Defendants KEANE, FUNK, ZAVALA, and PASLEY knew or should have known of a widespread practice by IDOC employees, including employees at Logan Correctional Center, who engaged in guard-on-inmate sexual assaults, including rapes, by way of direct reporting and investigations, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

61.     In December 2015, and for a period of time prior thereto, Defendant CHARRON, as PREA Compliance Manager at Logan Correctional Center, Defendant ASHLEY, as Mental Health Administrator: PREA Compliance Manager at Logan Correctional Center, and Defendant JOHNSON, as Back-Up to the PREA Compliance Manager at Logan Correctional Center were responsible for the creation, implementation, oversight, and supervision of training, policies, and

procedures followed by IDOC employees at Logan Correctional Center that related to PREA

violations. In December 2015, and for a period of time prior thereto, Defendants CHARRON,

ASHLEY, and JOHNSON knew or should have known of a widespread practice by IDOC

employees at Logan Correctional Center who engaged in guard-on-inmate sexual assaults,

including rapes, by way of direct reporting and investigations, annual PREA Compliance

Reports, John Howard Association Investigations and Reports, grievances, training, reports from

counselors, meetings, and lawsuits.

62.    The above-described widespread practice, so well-settled as to constitute a de

facto policy of Defendants BRANNON, LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE,

FUNK, ZAVALA, and PASLEY was able to exist and thrive because Defendants BRANNON,

LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY, who

had authority over the same, exhibited deliberate indifference to the problem. Defendants

BRANNON, LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and

PASLEY manifested deliberate indifference to these constitutional violations by failing to take

reasonable measures to remedy these violations. Among other things, Defendants BRANNON,

LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY failed

to adequately train, supervise, control, and discipline, including terminate, IDOC employees who

engaged, or were accused of engaging in, staff on inmate assaults, thus directly encouraging

future abuses such as those affecting Plaintiff. In this way, Defendants BRANNON, LOCKE,

CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY directed, knew

about, facilitated, approved, condoned, and consented to the conduct that caused the violation of

Plaintiff's constitutional rights, and violated Plaintiffs rights by maintaining policies and

practices that were the moving force driving the foregoing constitutional violations.

63.     Defendants BRANNON, LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY failed to adequately train, supervise, control, and discipline, including terminate, IDOC employees who they knew or should have known were assaulting inmates, and failed to intervene to either prevent the abuse from occurring or report the misconduct to alleviate the potential for future abuses, thus directly encouraging abuse such as was suffered by Plaintiff. In this way, too, Defendants BRANNON, LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY directed, knew about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's constitutional rights, and violated Plaintiffs rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations

64.     As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

### Count IV
### 42 U.S.C. § 1983 - Failure to Intervene
### Against Defendants ADAMS and JACKSON

65.      Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

66.     As described more fully above, Defendants Logan Correctional Officers ADAMS and JACKSON had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

67.     Defendants Logan Correctional Officers ADAMS and JACKSON knew of a substantial risk of harm to Plaintiff's safety, and could see or had the opportunity to see the harm occurring to Plaintiff as she was raped, or knew that the rape was going to occur, but consciously disregarded the risk Plaintiff was experiencing by failing to take reasonable steps to prevent the harm from occurring, or stopping it as it occurred.

68.     Defendants Logan Correctional Officers ADAMS's and JACKSON's failure to act was intentional, done with malice, and/or done with reckless indifference to Plaintiff's rights.

69.     As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**Count V**
**42 U.S.C. § 1983 – Conspiracy**
**Against Defendants KOHLRUS, ADAMS, JACKSON, BRANNON, LOCKE, CHARRON,**
**ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, and PASLEY**

70.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

71.     Defendants Logan Correctional Officers KOHLRUS, ADAMS, and JACKSON reached an agreement among themselves to deprive Plaintiff of her constitutional rights and to protect one another from liability for depriving Plaintiff of her rights, all as described in the various paragraphs of this Complaint.

72.     In furtherance of the conspiracy described in Paragraph 71, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

73.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

74.     As a direct and proximate result of the illicit prior agreement referenced in Paragraph 71, Plaintiff's rights were violated and she suffered injuries, including emotional distress.

75.     Defendants BRANNON, LOCKE, CHARRON, ASHLEY, JOHNSON, KEANE, FUNK, ZAVALA, PASLEY, SNYDER, and GABOR reached an agreement among themselves to deprive Plaintiff and other prisoners facing a substantial risk of sexual assault of their constitutional rights and to protect one another from liability for depriving Plaintiff and prisoners like her of their rights, all as described in the various paragraphs of this Complaint.

76.     In furtherance of the conspiracy described in Paragraph 76, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

77.     As a direct and proximate result of the illicit prior agreement referenced in Paragraph 75, Plaintiff's rights were violated and she suffered injuries, including emotional distress.

**Count VI**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, and GABOR**

78.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

79.     As stated more fully above, following the rape and Plaintiff's subsequent report, Plaintiff was placed in isolation and denied Boot Camp status. The conditions that Plaintiff experienced in isolation, including her eventual denial of Boot Camp status, were atypical and significantly imposed such a hardship on her that the risk of having to endure those conditions triggered a liberty interest requiring due process.

80.     Defendants failed to provide Plaintiff with due process before depriving her of that liberty interest. Specifically, Plaintiff had no hearing and no opportunity to dispute her continued confinement or denial from Boot Camp.

81.     The misconduct committed by Defendants were not random and unauthorized, but instead were the foreseeable result of the policies and practices of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendant GABOR.

82.     Specifically, in December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, were responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Logan Correctional Center as they related to PREA violations and staff-on-inmate

violence, including the investigation and discipline of inmates who make such reports. In December 2015, and for a period of time prior thereto, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON knew or should have known of a widespread practice at Logan Correctional Center that limited inmates' due process rights who made reports of PREA violations and staff-on-inmate violence by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, internal affairs investigatory reports, meetings, and lawsuits.

83.    The above-described widespread practice, so well-settled as to constitute a de facto policy of Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON was able to exist and thrive through Defendant GABOR because Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, who had authority over the same, exhibited deliberate indifference to the problem. Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON manifested deliberate indifference to these constitutional violations taken by Defendant GABOR by failing to take reasonable measures to remedy these violations. Among other things, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON failed to adequately train, supervise, control, and discipline, including terminate, Defendant GABOR who engaged, or was accused of engaging in, due process violations, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON directed, knew about, facilitated, approved, condoned, and consented to the conduct that caused the violation of Plaintiff's constitutional rights, and violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

84.    As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**Count VII**
**42 U.S.C. § 1983 – Retaliation (First Amendment)**
**Against Defendants BRANNON, CHARRON, ASHLEY, JOHNSON, GABOR, SNYDER,**
**and LOCKE**

85.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

86.     Plaintiff made statements about her sexual assault to prisoners and prison staff. These statements addressed a matter of public concern and were protected by the First Amendment.

87.     As a result of those statements Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendant GABOR retaliated against Plaintiff, placing her in segregation and punishing her. Plaintiff's statements were the cause and/or a motivating factor in the Defendants' decision to take the retaliatory actions.

88.     Defendants' retaliation is likely to deter First Amendment activity by Plaintiff, or a person in Plaintiff's position, in the future.

89.     Plaintiff suffered a further deprivation of her Constitutional rights that deterred future First Amendment activity when she was forced by Defendants BRANNON, CHARRON, ASHLEY, and JOHNSON, as well as Defendant GABOR to sign an agreement stating she would not discuss the rape committed by Defendant KOHLRUS.

90.     Despite being forced to sign an agreement to the contrary, Plaintiff's right to discuss Defendant KOHLRUS' sexual assault against her is a protected activity under the First Amendment.

91.     Plaintiff further suffered a further deprivation of her Constitutional rights that deterred future First Amendment activity when she was punished for allegedly discussing the assault by Defendants SNYDER and LOCKE while incarcerated at Decatur Correctional Center.

92.     As a result of Defendants' misconduct Plaintiff's rights were violated and she experienced injuries, including emotional distress.

**Count VIII**
**42 U.S.C. § 12132—Americans with Disabilities Act Claim**
**Against Defendant IDOC**

93.     Title II of the Americans with Disabilities Act prohibits exclusion of qualified individuals from participation in services, programs, or activities by public entities like Defendant IDOC.

94.     At all times relevant to her claims in this case, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

95.     The claims under the ADA are brought against Defendant IDOC as a department of the State of Illinois.

96.     Defendant IDOC is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

97.     Plaintiff was excluded and/or discriminated from participating in, and was denied the benefits of, the Impact Incarceration Program ("Boot Camp") due to her disability.

98.     Plaintiff's exclusion and/or discrimination from the Impact Incarceration Program was a direct and proximate result of her disability.

**Count IX**
**29 U.S.C. § 794(a)—Rehabilitation Act Claim**
**Against Defendant IDOC**

99.     For any program or activity receiving federal financial assistance, the Rehabilitation Act prohibits a qualified individual with a disability from being excluded from participating in, being denied the benefits of, or being subjected to discrimination in any such program or activity.

100.    Plaintiff is a qualified "individual with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

101.    At all times relevant to Plaintiff's claims, Defendant IDOC, as a department of the State of Illinois, received "[f]ederal financial assistance" within the meaning of 29 U.S.C. § 794(a).

102.    The operations of Defendant IDOC, including the Impact Incarceration Program, are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B).

103.    Plaintiff was excluded and/or discriminated from participating in, and was denied the benefits of, the Impact Incarceration Program ("Boot Camp") due to her mental health needs, including requiring psychotropic medication.

104.    Plaintiff's exclusion and/or discrimination from the Impact Incarceration Program was a direct and proximate result of her disability.

### Count X
### Illinois State Law – Assault & Battery
### Against Defendant KOHLRUS

105.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

106.    Pleading in the alternative, and as described more fully above, Defendant KOHLRUS made physical contact with Plaintiff without valid cause. That physical contact was offensive and harmful.

107.    As described more fully above, Defendant KOHLRUS intended to harm and/or frighten Plaintiff without valid cause. His actions did in fact cause Plaintiff fear and apprehension.

108.    As a direct and proximate result of Defendant KOHLRUS' conduct, Plaintiff experienced injuries, including emotional distress.

**Count XI**
**Illinois State Law – Sexual Abuse**
**Against Defendant KOHLRUS**

109.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

110.    In the manner described more fully above, Defendant KOHLRUS' actions were done intentionally, willfully and wantonly, or with such reckless disregard for their natural consequences as to constitute the tort of sexual abuse under the laws and constitution of the State of Illinois

111.    As a direct and proximate result of Defendant KOHLRUS' conduct, Plaintiff experienced injuries, including emotional distress.

**Count XII**
**Illinois State Law – Intentional Infliction of Emotional Distress**
**Against Defendant KOHLRUS**

112.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

113.    Pleading in the alternative, and in the manner described more fully above, Plaintiff Defendant KOHLRUS engaged in extreme and outrageous conduct when he raped Plaintiff in the laundry room at Logan Correctional Center.

114.    Defendant KOHLRUS' actions as set forth above were rooted in an abuse of power or authority.

115.    Defendant KOHLRUS' actions as set forth above were undertaken intentionally or with knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

116.    Defendant KOHLRUS' actions, as set forth above, were undertaken intentionally, with malice, and/or reckless indifference to Plaintiff's rights.

**Count XIII**
**Illinois State Law – Negligent Spoliation of Evidence**
**Against Defendants BRANNON, CHARRON, JOHNSON, ASHLEY, KEANE, FUNK,**
**ZAVALA, PASLEY, and GABOR**

117.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

118.    Defendants BRANNON, CHARRON, JOHNSON, ASHLEY, KEANE, FUNK, ZAVALA, PASLEY, and GABOR had a duty to preserve the photographic and/or video evidence depicting Plaintiff during the early morning on December 28, 2015.

119.    It was clear to Defendants BRANNON, CHARRON, JOHNSON, ASHLEY, KEANE, FUNK, ZAVALA, PASLEY, and GABOR—and to any reasonable person—that such evidence was material to a potential legal action related to the rape Plaintiff suffered at the hands of Defendant KOHLRUS.

120.    Despite this, Defendants BRANNON, CHARRON, JOHNSON, ASHLEY, KEANE, FUNK, ZAVALA, PASLEY, and GABOR failed to preserve that photographic and/or video evidence.

121.    This failure has negatively and materially impacted Plaintiff's ability to prove her claims in this litigation.


WHEREFORE, Plaintiff, JACQUELINE FARRIS, by and through her attorneys, LOEVY & LOEVY, respectfully requests that this Court enter judgment in her favor and against Defendants CHRISTINE BRANNON, CLARA CHARRON, NORINE ASHLEY, LISA JOHNSON, PATRICK KEANE, MIKE FUNK, FELIPE ZAVALA, ALAN PASLEY, ERIK KOHLRUS, ALEX ADAMS, LAURA JACKSON, JEFF GABOR, TRINA SNYDER,

ANGELA LOCKE, and THE ILLINOIS DEPARTMENT OF CORRECTIONS, awarding

compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems

appropriate.

## JURY DEMAND

Plaintiff, JACQUELINE FARRIS, by and through her attorneys, LOEVY & LOEVY,

hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so

triable.


Dated:  November 12, 2019                                        Respectfully Submitted,

                                                                /s/ Megan Pierce_____
                                                                *One of Plaintiff's Attorneys*

                                                                Arthur Loevy
                                                                Jon Loevy
                                                                Julie Goodwin
                                                                Sarah Grady
                                                                Megan Pierce
                                                                LOEVY & LOEVY
                                                                311 N. Aberdeen, 3rd Floor
                                                                Chicago, IL 60607
                                                                Phone: (312) 243-5900
                                                                Fax: (312) 243-5902