E-FILED
Thursday, 14 May, 2020  02:10:11 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JACQUELINE FARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cv-3279-SEM-TSH |
| | ) | |
| ERIC KOHLRUS, et al., | ) | Hon. Sue E. Myerscough, Judge |
| | ) | |
| Defendants. | ) | Hon. Tom Schanzle-Haskins, Mag. Judge |

## PLAINTIFF'S SECOND RENEWED MOTION
## FOR LEAVE TO TAKE DEPOSITIONS PURSUANT
## TO FEDERAL RULE OF CIVIL PROCEDURE 30(a)(2)

Plaintiff, Jacqueline Farris, through her attorneys, hereby respectfully renews her motion for leave to take depositions pursuant to Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure, stating as follows:

## INTRODUCTION

Throughout discovery, Plaintiff has taken steps to focus her claims and target her investigation. Based on information learned during the discovery process, Plaintiff has dismissed numerous defendants and worked to cooperate with the remaining Defendants to limit the number of disclosed witnesses in this litigation. But this is a complex case in which Plaintiff was injured when numerous Defendants acted to cause her rape, and then retaliate and discriminate against her following her decision to report that rape. Moreover, Defendants have disclosed 36 witnesses in their Rule 26(a)(1) disclosures that they contend support their defenses to Plaintiff's claims, necessitating investigation into the information possessed by those witnesses.

Accordingly, the deposition limits set out in the Federal Rules is simply not sufficient in this matter, which implicates significant issues of public importance. Plaintiff therefore renews her motion for leave to take additional depositions and simultaneously asks for the Court's

assistance in limiting the number of disclosed witnesses in this case. After careful deliberation and for the reasons discussed in greater detail below, Plaintiff respectfully asks the Court for permission to take the depositions of (1) Defendants Lisa Johnson and Felipe Zavala; and (2) the following individuals identified in Defendants' Rule 26(a)(1) disclosures: David Suttons, Robert Allison, Leah Taylor, Karen Pfost, and Shelby Warner.  Plaintiff further asks the Court to strike from Defendants' 26(a)(1) disclosures or, in the alternative, to grant Plaintiff leave to take depositions of the following individuals: Ann Lahr, Katina Joiner, Michele L. White, Brittany L. Ott, Linda R. Ligon, Demian Harkins, Tiona M. Farrington, Eric Ganier, Adam Hergert, Ryan Nottingham, Jeffrey Milbauer, and Jeff Short.

## BACKGROUND

Plaintiff brought this lawsuit to seek redress for the rape that she suffered while incarcerated at Logan Correctional Center, as well as the campaign of retribution, harassment, and discrimination that she was subjected to as a result of coming forward about that rape. Dkt. 170. In her First Amended Complaint, Plaintiff named 30 defendants as responsible for her injuries. Dkt. 14.

In response to Plaintiff's allegations, the Defendants identified a total of 46 potential trial witnesses pursuant to Rule 26(a)(1), as well as several record keepers, who Defendants contend will refute or rebut Plaintiff's allegations. Ex. 1 (Defs.' Apr. 14, 2020 Disclosures). Aside from Plaintiff, the vast majority (if not all) of these witnesses are IDOC employees, and therefore Defendants, including the IDOC, have exclusive access to them and the information they possess.[1] Based on these disclosures, in December 2018 Plaintiff sought leave from the Court to

---

1 The four medical providers—Robert Allison, Leah Taylor, Karen Pfost, and Shelby Warner—might be either IDOC or Wexford employees, but the contact information provided for them is the contact information for Logan Correctional Center. *See* Ex. 3 at 7. Even if these four

take depositions in excess of the 10 depositions allowed by the Federal Rules of Civil Procedure. Dkt. 111. The Court denied this motion as premature because Plaintiff had taken only two depositions at the time. The Court instructed the parties to negotiate an appropriate number of additional depositions and noted that, if the parties could not reach agreement, Plaintiff could renew her motion. Court's January 16, 2019 Text Order.

The parties proceeded with discovery, and Plaintiff took seven additional depositions, resulting in substantial information showing the strength of Plaintiff's claims against the Defendants. *See* Dkt. 150 at 3-7. Plaintiff also used the discovery process to focus her claims, and she repeatedly made efforts to cooperate with Defendants to reduce the number of defendants and identified witnesses in this litigation, as well as to reach agreement on an appropriate number of additional depositions. *See* Ex. 2 (email with opposing counsel). But Defendants repeatedly rebuffed Plaintiff's efforts to cooperate, and staunchly refused either to reduce their number of disclosed witnesses or to agree to allow Plaintiff to depose the witnesses who they had identified as possessing relevant information.

As a result, Plaintiff was forced to renew her motion for leave to take additional depositions. Dkt. 150. In her motion, Plaintiff asked the Court for leave to take the depositions of (1) all defendants, (2) witnesses identified in 26(a)(1) disclosures; (3) experts identified in Rule 26(a)(2) disclosures; and (4) seven additional depositions. *Id.* at 18. The Court granted Plaintiff leave to take three more depositions, while also instructing the parties to negotiate a number of additional depositions beyond the three permitted by the Court. Dkt. 160 at 14-17. The Court also indicated that the parties should negotiate to reduce the number of disclosed witnesses. *Id.* If

---

individuals are Wexford employees, IDOC and the other Defendants will in practice have exclusive access to them. The remaining witnesses identified by Defendants are all IDOC employees.

the parties could not reach agreement, the Court noted that Plaintiff could again renew her motion. *Id.* at 17.

Since the Court's Order, counsel for the parties have worked to reach compromise. Specifically, Plaintiff agreed to resolve her claims against 15 Defendants based on information obtained through written discovery, and Defendants agreed to remove these individuals from their witness disclosures, obviating Plaintiff's need to depose them. *Compare* Dkt. 14 *with* Dkt. 170; *see also* Ex. 3 (Defendants' supplemental Rule 26(a)(1) disclosures).[2] The parties also agreed to depositions of Defendants Erik Kohlrus, Patrick Keane, Mike Funk, and Clara Charron, as well as a Rule 30(b)(6) deposition of the IDOC, which have all been completed. Finally, the parties have agreed that Plaintiff will take the depositions of Defendants Norine Ashley and Christine Brannon, and are working to schedule those depositions.

But there remain additional witnesses in IDOC's exclusive control that Defendants have indicated they may call at trial but are unwilling to allow Plaintiff to depose. Plaintiff has asked Defendants numerous times to reduce their list of disclosed potential witnesses. Although Defendants have made repeated and vague assurances to Plaintiff that they will revisit their list of disclosed witnesses, their most recent disclosures removed only the Defendants dismissed by Plaintiff. Ex. 3. Rather than remove any of the remaining 30 disclosed witnesses and four record custodians, Defendants *added six* additional defense witnesses, and expanded the scope of other already-identified witnesses' testimony.

Plaintiff agrees that some of the [36] witnesses on Defendants' witness list do have relevant testimony and should be deposed in this case. *Id.* They include:

- Defendant Lisa Johnson, Logan's Back-Up Prison Rape Elimination Act (PREA)

---

2 Plaintiff had already dismissed Defendant Amy Rude pursuant to an agreement with Defendants and their provision of pertinent interrogatory responses. Dkt.147

Compliance Manager, who interviewed Plaintiff after she reported her sexual assault;

- Defendant Felipe Zavala, IDOC's Back-Up PREA Coordinator;

- Robert Allison, the physician assistant who examined Plaintiff immediately following her rape;

- Leah Taylor, the nurse to whom Plaintiff reported her sexual assault;

- Shelby Warner, the nurse practitioner who attended Plaintiff's examination;

- Karen Pfost, a psychologist who treated Plaintiff after her sexual assault and prescribed her the anti-anxiety medication that IDOC used to deny Plaintiff access to boot camp; and

- David Suttons, an officer who attended the interview between Defendants Jeff Gabor and Erik Kohlrus about Plaintiff's assault as Defendant Kohlrus's union representation.

But Defendants have identified several more witnesses that they contend support their defenses. These witnesses include:

- Katina Joiner, Michele White, Brittany Ott, Linda Ligon, Demian Harkins, and Tiona Farrington, correctional counselors who encountered Plaintiff sporadically at Logan or Decatur, and who Defendants vaguely contend have "knowledge of relevant grievance policies and procedures";

- Ann Lahr, an Administrative Review Board Chairperson, whom Defendants contend has knowledge of Plaintiff's filing of grievances and "of relevant grievance policies and procedures";

- Todd Ganier, an IDOC food supervisor who wrote an incident report after Plaintiff reported that she had been sexually assaulted at Logan;

- Adam Hergert and Ryan Nottingham, IDOC employees whom Defendants vaguely contend have knowledge about various IDOC and Logan policies;[3] and

---

3 Defendants have also recently added Larry Sims, Doug Stephens, and Nicole Bartelmay to their Rule 26(a)(1) disclosures, identifying them as witnesses with knowledge about vague and expansive IDOC policies and procedures. Ex. 3 at 9. Larry Sims and Doug Stephens were previously deposed solely as IDOC's Rule 30(b)(6) designees on discrete topics, and Nicole Bartelmay was deposed solely about her role collecting forensic evidence of Plaintiff's sexual assault (and testifying about that collection in Erik Kohlrus's criminal case). Defendants have also amended their disclosures to indicate that they may call Bradley Buhl to testify about

- Jeffrey Milbauer and Jeff Short, whom Defendants contend have knowledge about video surveillance at Logan.

Every one of these witnesses is a former or current IDOC or Wexford employee, and the only contact information provided by Defendants is through Defendant IDOC itself. Accordingly, Plaintiff is unable to access those individuals to determine what information they might testify to at trial, except through deposition. *See Scott v. City of Sioux City*, 298 F.R.D. 400, 402-03 (N.D. Ia. 2014) (permitting additional depositions because "[c]ertain proposed deponents are ethically 'off limits' to [plaintiff's] counsel due to their existing positions" with the governmental entity, such that "for the most part, depositions represent the only feasible method for [plaintiff] to obtain [the relevant] information."); *id.* ("While other[] [witnesses] may be hypothetically available, none would be required to provide information to [plaintiff's] counsel informally, nor would they be required to sign affidavits" and, crucially, "there is no guarantee that [plaintiff] would be in a position to provide sworn testimony in resistance to [defendants' summary judgment] motions if she is not able to depose the witnesses at issue.").

The information known by these witnesses is not only out of reach to Plaintiff, but also likely to support her case. The depositions taken to date by Plaintiff have confirmed the strength of Plaintiff's claims that supervisors and policymakers at IDOC not only knowingly tolerated, but actually encouraged an environment at Logan Correctional Center where prisoners were

---

"relevant IDOC and Logan policies and procedures," after he sat for a very brief deposition focused on the area of knowledge previously disclosed by Defendants—the IDOC's shift roster. *Id.* at 7. All of these witnesses are expressly represented by defense counsel. Plaintiff has asked Defendants to limit the identification of these witnesses to the topics discussed during their depositions, or to allow Plaintiff to depose them on the newly identified topics. The parties have not yet reached impasse on this issue, however, and so Plaintiff does not yet seek relief from this Court regarding these witnesses.

subjected to frequent sexual harassment and assault by staff who were not properly trained or instructed to interact with female prisoners. As a result, permitting Plaintiff to further develop the record through oral discovery will undoubtedly result in the parties learning additional, significant information demonstrating the merit of Plaintiff's claims.

More specifically, the written and oral discovery shows that when Logan Correctional Center was transitioned to house women prisoners in 2013, then-warden Angela Locke and other IDOC supervisory officials knew that staff were not being properly trained or instructed to work with female prisoners. Consequently, at least four women prisoners suffered custodial sexual assaults at Logan in the months immediately following the switch, and rumors about staff engaging in sexual relationships with the women prisoners were constant and widespread. Despite this, Warden Locke and others supervisory officials took no meaningful corrective action and provided no training regarding sexual misconduct.[4] In the years following the transition of Logan Correctional center to a women's prison, officials responsible for PREA compliance were aware that Logan was not meeting PREA standards and that there were multiple cases of custodial sexual assault. But officials again took no meaningful action to ensure that adequate training was being provided, or that reports of sexual custodial misconduct at Logan were being investigated and responded to in line with PREA requirements.

As a result, women prisoners who reported suffering custodial sexual assault at Logan, including Plaintiff, did not have their cases adequately investigated. Defendant Gabor testified

---

4 As an example of the consequences of this failure, Defendant Kohlrus—who recently pleaded guilty to criminal custodial sexual misconduct with regard to his assault of Plaintiff—testified at his deposition that, based on his understanding, the reason guards should not engage in sexual relationships with prisoners is that the guards might contract a sexually-transmitted infection; he did not express any understanding about the inability of prisoners to meaningfully consent to a sexual relationship with a guard.

during his deposition that the investigation into Plaintiff's sexual assault failed to comply with the PREA policy's investigation requirements in a number of aspects. [5] Additionally, women prisoners who reported custodial sexual assault were frequently disciplined or otherwise retaliated against. After Plaintiff reported her sexual assault, Defendant Gabor placed her in restrictive custody—called "investigative status"—which is punitive in nature because it prohibits prisoners from accessing privileges in the facility that other prisoners in general population enjoy. Defendant Snyder testified during her deposition that she wrote Plaintiff a disciplinary ticket solely based on the fact that Plaintiff spoke about her rape after Defendant Snyder issued her a direct command not to speak about it with anyone not approved by Defendant Snyder herself. And finally, Plaintiff was denied access to boot camp solely because she was prescribed anti-anxiety medication to cope with the effects of her rape, pursuant to a non-discretionary IDOC policy that prisoners taking any form or dosage of psychotropic medication are ineligible for boot camp. Had Plaintiff been permitted to enroll in and complete the boot camp, the time she spent incarcerated and separated from her children would have been significantly decreased.

In sum, these depositions, along with other discovery gathered to date, show that sexual assault at Logan Correctional Center in the months and years after it became a female facility in 2013 was commonplace. Violations of the mandatory PREA regulations, and of the IDOC's own policies and procedures, were rampant, including the failure by staff to report frequent "rumors" of sexual encounters between staff and prisoners, and retaliation against female prisoners who were brave enough to report their abuse. The IDOC Defendants knew of these violations and yet

---

5 Female prisoners were also required to corroborate their sexual assault, and disbelieved when they could not do so.

failed to take action to correct them and/or provide training, allowing these dangerous practices, which put women at substantial risk of sexual assault by staff, to continue. It is perhaps because of the strength of the discovery gathered so far that Defendants have now identified so many additional witnesses they contend will support their version of the events. If Defendants are permitted to call these additional witnesses at trial, Plaintiff should be permitted to understand their testimony and question them at a deposition.

## DISCUSSION

As discussed in Plaintiff's previous motion for leave to take additional depositions, the federal discovery rules, by design, are liberal in their scope. This liberal approach is aimed at facilitating trial preparation and furthering the search for truth. *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Rule 26 provides that parties may obtain discovery of any non-privileged matter relevant to the claims or defenses in the case. Fed. R. Civ. P. 26. Although Rule 30 sets a default limit of 10 depositions per side, a party may seek leave to exceed this limit, which the Court "*must* grant . . . to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2) (emphasis added); *Hoffman v. BLR Grp. of Am., Inc.*, 2009 WL 1768799, at *2 (S.D. Ill. Jun. 23, 2009).

Rule 26(b)(1) and (2) operate together. Rule 26(b)(1) sets out a broad and permissive scope of discovery, providing that parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) simultaneously permits

courts to limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). But "[b]efore restricting discovery [pursuant to Rule 26(b)(2)], the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation marks omitted) (citing Fed. R. Civ. P. 26 advisory comm. notes; 8 Wright, Miller & Marcus, Federal Practice & Procedure § 2008.1 (1994)). In other words, "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Fed. R. Civ. P. 26, Advisory Committee Notes.

Moreover, Courts routinely consider the fact of a large number of witnesses disclosed by an opposing party as grounds for expanding the number of permitted depositions. *See, e.g., Fairley v. Andrews*, 423 F. Supp. 2d 800, 807 (N.D. Ill. 2006) (noting that the court had permitted plaintiffs to take 60 depositions, in civil rights case with *Monell* claims, in part due to the large number of witnesses disclosed by defendants); *Hoffman v. BLR Group of Am., Inc.*, 2009 WL 1768799, *1-2 (granted defendants leave to take at least 26 depositions, and relying in part on the fact that "the individuals they seek to depose were identified by plaintiff as having [relevant] information"); *Thykkuttathil v. Keese*, 294 F.R.D. 601, 603 (W.D. Wash. 2013) (granting defendants request to depose additional witnesses in light of the number of witnesses disclosed by plaintiffs).

Taking into account the factors delineated in Rule 26(b)(1) and the fact that Defendants have disclosed 36 potential witnesses, the requested depositions are warranted in this case, and this Court should grant Plaintiff leave to take them.

## I.     Granting Plaintiff Leave to Take the Requested Depositions Is Necessary to Ensure Both Sides Are Treated Fairly.

Each of the principles set forth in Rule 26(b)(1) governing the discovery process, consistent with which the Court must grant or deny leave to conduct additional depositions, favors permitting Plaintiff to conduct additional depositions. The bounds of permissible discovery should be drawn in light of (a) the importance of the issues at stake in the action, (b) the amount in controversy, (c) the parties' relative access to relevant information, (d) the parties' resources, (e) the importance of the discovery in resolving the issues, and (f) whether the burden or expense outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1).

### A.     The Amount in Controversy Is Substantial and the Issues Are Profoundly Important.

In this case, there are important issues at stake and a significant amount in controversy. Plaintiff was raped by a correctional officer, an injury for which she suffers trauma to this day. Juries in this Circuit have repeatedly awarded plaintiffs with similar claims substantial money damages. *See Martin v. Milwaukee Cnty.*, 904 F.3d 544, 547 (7th Cir. 2018) ($6.7 million verdict for plaintiff who was raped by guard at Milwaukee County Jail); *J.K.J. v. Polk Cnty.*, 928 F.3d 576, 602-04 (7th Cir. 2019) (upholding award of $3.75 million in compensatory damages and $2 million in punitive damages for women raped by guard at Polk County Jail). Plaintiff's lawsuit not only focuses on her rape, but also on the circumstances that led to it—a hastily planned and poorly executed decision by deliberately indifferent administrators to change the population at Logan to women without providing appropriate training or instruction, and continued deliberate

indifference while instances of sexual assault by staff became increasingly more common, as the evidence gathered thus far has already uncovered. *See Childress v. Walker*, 787 F.3d 433, 440 (7th Cir. 2015) (prison administrators, "responsible for setting policy," may be held liable under the Eighth Amendment for the constitutional deprivation caused by their policy).

And there's more. Plaintiff also suffered retaliation by individuals and formal IDOC policies after reporting her rape. Defendant Gabor immediately placed her into restricted status. And after she agreed to take the anti-anxiety medication prescribed to her by a psychiatrist in the days following her rape, she was denied the ability to participate in the boot camp program, forcing her to serve a custodial sentence approximately 2.5 years longer than intended and anticipated. *See* 20 Ill. Admin. Code 460.80 (boot camp participants required to complete 120-day program, and upon completion, permitted to serve remainder of sentence on supervised release). Whether her removal from the program was based on retaliation or unlawful discrimination in violation of the ADA, the evidence demonstrates that but for this unlawful action, Plaintiff would have had additional years at home with her two young children. *See Jiminez v. City of Chicago*, 732 F.3d 710, 712-13 (7th Cir. 2013) (upholding $25 million verdict in favor of plaintiff wrongfully imprisoned for 25 years); *Kuri v. City of Chicago*, No. 13 C 1652, Dkt. 313 (N.D. Ill. Oct. 3, 2018) ($4 million compensatory damages verdict for plaintiff wrongfully imprisoned for three years). And the IDOC's policy prohibiting any person on any type of mental health medication, regardless of the type, dosage, or impact on ensuring a person's mental health, is a clear ADA violation, and a verdict on this claim will have far-reaching effects in the IDOC's treatment of prisoners with disability who require medication to maintain their mental health.

In sum, the gravity of issues at stake in this case strongly favors robust discovery, including depositions of key witnesses and Defendants by Plaintiff. Fed. R. Civ. P. 26, Notes of Advisory Committee on Rules—1983 Amendment (Discovery should be permitted considering "the significance of the substantive issues, as measured in philosophic, social, or institutional terms").

**B. Defendants Enjoy Exclusive Access to All Defense Witnesses and the Burden on Defendants of Conducting These Depositions Will Be Minimal.**

Like in many cases brought on behalf of current or former prisoners concerning state officials' misconduct in prison, Defendants' access to relevant information far exceeds that of the Plaintiff. Of the 19 defense witnesses who Plaintiff now seeks to depose, two are Defendants and all are current IDOC or Wexford employees over whom Defendants, in practice, enjoy exclusive access.[6] As such, Defendants have strong strategic reasons for wanting this Court to sharply limit the number of depositions Plaintiff may take: counsel for Defendants has and will have unilateral, unfettered access to all of their witnesses and will therefore be able to prepare them for trial in ways unavailable to Plaintiff's counsel. Depriving Plaintiff of the opportunity to probe these witnesses' knowledge would create an imbalance of information that is fundamentally unfair to Plaintiff. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), and Plaintiff should be permitted to take additional depositions to gather knowledge in all of these relevant areas and gain an equal footing with the defense.

Furthermore, to fail to permit Plaintiff to depose witnesses disclosed by the Defendants would work a strange illogic into the structure of the federal rules. "[F]ederal courts uniformly

---

6 All of the third-party witnesses who have appeared for depositions thus far have been represented at those depositions by counsel for Defendants.

disapprove of trial by ambush." *Sud-Chemie, Inc. v. CSP Techs., Inc.*, 2006 WL 2246404, at *45 (S.D. Ind. Aug. 4, 2006); *see also id.* at 34 (collecting cases). This principle is embodied in Rule 26(a)'s disclosure requirements and the sanctions imposed when a party does not comply. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (the exclusion of the testimony of the undisclosed witness is "automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless"). This Court should not force Plaintiff to attend trial with only a mere guess as to what 19 defense witnesses, including two Defendants, might have to say at trial.

Finally, consideration of the parties' resources and the comparative burden and benefit of the proposed discovery counsels toward granting Plaintiff's request for additional depositions in this case.[7] Plaintiff has worked diligently on her own to trim the sails of her case: keeping depositions as short as possible, dismissing defendants when appropriate, and seeking alternatives to depositions when feasible. She has also worked (and will continue to work) to schedule them in a way that minimizes the burden for everyone (e.g., conducting multiple depositions per day in locations convenient for witnesses and defense counsel, scheduling depositions of witnesses who are geographically close on consecutive days, or conducting depositions via video conference). Additionally, all of the defense witnesses live in the State of Illinois and, to the best of Plaintiff's knowledge, in either Springfield or the Logan area, and thus

---

7 In response to Plaintiff's first motion for leave to take additional depositions, Defendant Rude (who has since been dismissed) argued that Plaintiff's decision not to order the transcripts indicated her belief that the depositions are unnecessary. Dkt. 115 at 4-5. Not so. To the contrary, Plaintiff's attorneys have a policy not to order deposition transcripts until the transcription itself is required—usually during expert discovery or at summary judgment. This policy is used to minimize costs to counsel's client, who appreciate those efforts in the event of an early settlement. To ensure that the vital information gleaned during these depositions can be put to use before the transcripts themselves are obtained, Plaintiff's counsel takes extensive notes during the depositions.

only Plaintiff's counsel will be required to undertake meaningful travel to attend them, in the unlikely case that the depositions are not conducted via video conference due to the COVID-19 pandemic.

### C.  Plaintiff Has Carefully Identified the Witnesses Who She Believes Have Relevant Information and Seeks to Obtain Proportionate Oral Discovery.

Plaintiff has carefully reviewed the discovery in this case and Defendants' disclosures, and created a tailored plan to move forward with oral discovery in a way that will uncover information resolving the central issues in this case without wasting resources and while also protecting Plaintiff from trial by ambush.

### 1.  This Court Should Grant Plaintiff Leave to Conduct Limited Depositions of the Remaining Defendants and Certain Key Witnesses.

Plaintiff asks the Court for leave to take the depositions of the two remaining Defendants: Lisa Johnson and Felipe Zavala. It is critical that plaintiffs have the opportunity to conduct oral discovery with regard to each defendant, and for this reason courts routinely recognize the need for additional depositions where there are a large number of named defendants in a case. *Corey Airport Servs., Inc. v. City of Atlanta*, 2007 WL 9717220, at *1-2 (N.D. Ga. Feb. 20, 2007) (because the "the number of named defendants alone exceeds the Rule 30(a)(2)(A) default maximum," the "plaintiffs are well within their rights to request additional depositions").  This is especially true where, as here, Plaintiff has diligently worked to limit the number of named Defendants and dismiss those who discovery has shown had only limited involvement in her injuries.

But several Defendants necessarily remain, as this is a complex case in which Plaintiff's injuries were not the result of a discrete, single act by a solitary actor, but rather the result of indifference from multiple supervisory defendants who caused Plaintiff's injuries over an extended period of time. These Defendants created an environment where sexual harassment and

assault were commonplace at Logan, and knowingly failed to take any meaningful action to address the serious problems, thereby causing Plaintiff's rape, and then retaliating and discriminating against her for reporting and discussing that rape. *See Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012) (constitutional violations may have multiple proximate causes). Such allegations involving the conduct of multiple individuals and the violation of important Constitutional rights necessarily require broader oral discovery. *See Thykkuttathil v. Keese*, 294 F.R.D. 601, 603 (W.D. Wash. 2013) (granting leave to take additional depositions due to the breadth and complexity of the cases); *cf. Nat'l Union Fire Inx. Co. of Pittsburgh v. Hicks, Muse, Tate & Furst, Inc.*, 2002 WL 1822738, at *2 (S.D.N.Y. Aug. 8, 2002) (noting that whether the case is complex or of "great public interest" should be considered when determining whether to grant leave to take additional depositions).

Additionally, the results of the discovery process to date strongly suggest that Defendants Felipe Zavala and Lisa Johnson will have significant information relevant to Plaintiff's claims. Defendant Johnson was the Back-Up PREA Compliance Manager for Logan and interviewed Plaintiff after she reported her sexual assault. During this interview, Plaintiff explained to Defendant Johnson what happened during her assault and requested a Rape Kit. She also told Defendant Johnson that she believed the other guards were covering for Defendant Kohlrus during the assault, and that Defendant Kohlrus threatened Plaintiff following the assault. Moreover, as Back-Up PREA Compliance Manager Defendant Johnson was responsible for ensuring that Logan's practices were consistent with the mandatory PREA regulations and IDOC's own policies and procedures related to sexual assault and harassment.

Defendant Zavala was Back-Up Agency PREA Coordinators for the whole of IDOC. Defendants Funk, Keane, and Pasley testified that Defendant Zavala was significantly

responsible for developing the woefully insufficient training program provided to officers about sexual assault and sexual harassment, as well as the training provided to investigators like Gabor—who already testified that he did not adequately investigate Plaintiff's sexual assault. Defendant Zavala was also responsible for reviewing reports of investigations into sexual assault at Logan, among other facilities, and ensuring that those investigations and the resulting action complied with PREA regulations and IDOC policies.

Plaintiff should be given the opportunity to question Defendants Zavala and Johnson at a deposition about what knowledge they and other Defendants had regarding Logan's noncompliance with PREA. As evidenced by the depositions of Defendants Funk and Keane, little to no meaningful action was taken to ensure compliance with PREA regulations and IDOC policies at Logan and other IDOC facilities. To limit any burden these depositions may pose on the resources of the parties, Plaintiff agrees to limit the depositions of Defendants Johnson and Zavala to five hours each.

Plaintiff further requests leave to depose the defense witnesses (all of whom apparently still work at Logan) who interacted with Plaintiff immediately after she was sexually assaulted, including Robert Allison, Leah Taylor, Shelby Warner, and Karen Pfost. The parties agree that these witnesses have relevant testimony, but because they are either IDOC or Wexford employees, only Defendants and their counsel have access to them. Plaintiff should be entitled to depose them—at a deposition limited to no more than two hours—to understand their recollection of events (a fact Defendants already are able to learn without depositions).

Finally, Plaintiff requests leave to depose David Suttons, who attended the interview between Defendants Jeffrey Gabor and Erik Kohlrus on December 30, 2015 as Defendant Kohlrus's union representative. Mr. Suttons is likely to shed light on what occurred during the

interview (Defendant Gabor testified about his typical practice, but Defendant Kohlrus testified he had no memory of the interview), as well as conversation that Mr. Suttons had with Defendant Kohlrus immediately before and after the interview. Given Defendant Kohlrus's contention about the nature of the sexual encounter between Plaintiff and Defendant Kohlrus, Mr. Suttons's testimony about Defendant Kohlrus's admission is likely to be relevant and Plaintiff should be entitled to conduct a brief, 90-minute deposition of him.

### 2.   This Court Should Exclude Defendants' Remaining Defense Witnesses, or Grant Plaintiff Leave to Depose Them.

In addition to those discussed above, Defendants have identified 12 IDOC employees that they contend may testify in their defense at trial: Katina Joiner, Michele White, Brittany Ott, Linda Ligon, Demian Harkins, Tiona Farrington, Ann Lahr, Todd Ganier, Adam Hergert, Ryan Nottingham, Jeffrey Milbauer, and Jeff Short. Nearly all of these witnesses are identified vaguely as having knowledge about various (and expansive) IDOC "policies and procedures." Four of these witnesses' expansive topics of asserted knowledge came just weeks ago, after the evidence discussed above had been adduced.

According to Defendants' disclosures, several of these witnesses do not possess relevant information. Katina Joiner, Michele White, Brittany Ott, Linda Ligon, Demian Harkins, Tiona Farrington, and Ann Lahr are identified as being knowledgeable about sporadic interactions with Plaintiff long after her sexual assault and being generally knowledgeable about IDOC's grievance policies. Ex. 3 at 5-6. Grievance policies and interactions that these witnesses had with Plaintiff about attending various classes at Logan and Decatur have no bearing on any issue in dispute in this case. [8] Accordingly, these witnesses should be stricken from Defendants' Rule

---

8 Although Defendants have asserted an affirmative defense that Plaintiff failed to exhaust her administrative remedies, they have not sought any relief regarding that request and have thus forfeited it. Even if it had not been forfeited, exhaustion of administrative remedies is a

26(a)(1) disclosures. In the alternative, if Defendants are permitted to call these witnesses at trial, Plaintiff should be permitted to conduct one-hour depositions of these witnesses to understand the testimony that Defendants contend support their defense to liability.

Defendants also indicated that they may call Todd Ganier, a food supervisor to whom Plaintiff reported that she had been transferred from Logan to Decatur because of the incident with Erik Kohlrus, to testify about Plaintiff's report and the incident report that Mr. Ganier wrote about it—an incident report that eventually led to Plaintiff's retaliation by Defendant Snyder. Defendant Snyder does not contend that she spoke with Mr. Ganier or relied on information outside of the incident report to retaliate against Plaintiff. The information possessed by Ganier is not relevant to the issues in dispute in this case—namely, whether it was lawful for Defendants to discipline Plaintiff for that conduct. As such, Mr. Ganier should be stricken from Defendants disclosures. If the Court declines to strike Mr. Ganier from Defendants' Rule 26(a)(1) disclosures, then this Court should permit Plaintiff leave to conduct a one-hour deposition of him to understand the contours of his testimony.

Finally, Defendants have identified Defendants Adam Hergert and Ryan Nottingham to provide testimony about "relevant IDOC" policies and procedures, and Jeffrey Milbauer and Jeff Short to provide testimony about video surveillance cameras at Logan. As Defendants will undoubtedly point out in response to Plaintiff's motion, there have been several hours of testimony from Defendants and witnesses, including Rule 30(b)(6) designees, about IDOC's policies and procedures. These witnesses' testimony is therefore cumulative and should be stricken from Defendants' Rule 26(a)(1) disclosures.

---

matter for this *Court* to decide, and witnesses should not be permitted to testify regarding the issue at trial. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

If, on the other hand, Defendants maintain their position that any of these identified witnesses in fact possess information that is relevant (and non-cumulative) to Plaintiff's claims, then Plaintiff should be permitted an opportunity to depose these individuals and explore that information. These witnesses are all IDOC employees and thus as a practical matter are not accessible to Plaintiff. She should be permitted an opportunity to meaningfully prepare to address any testimony they might provide at trial with depositions no more than three hours each.

"The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014)). Without the opportunity to depose potential witnesses to whom IDOC has exclusive access, Plaintiff faces a real threat of trial by ambush, which the Federal Rules are intended to avoid. *See Shott v. Rush Univ. Med. Ctr.*, 2015 WL 138098, at *5 (N.D. Ill. Jan. 7, 2015) ("The primary purpose of the discovery rules in the Federal Rules of Civil Procedure is to avoid litigation by surprise."). This is especially true here, where Defendants have disclosed witnesses as having knowledge about very broad and general topic areas. Without an opportunity to depose these individuals or otherwise determine the information they may testify to at trial, Plaintiff is simply unable to adequately investigate and prepare her case. For this reason, the Court should either strike these disclosed witnesses from Defendants Rule 26(a)(1) disclosures, or permit Plaintiff to conduct limited depositions of each. *See Price v. Gwinnett Family Care, LLC*, 2007 WL 3477771, at *5 (N.D. Ga. Oct. 31, 2007) (concluding that "[t]o the extent the individuals Plaintiff seeks to depose remain potential witnesses for the defense, the Court finds that Plaintiff is entitled to inquire into their knowledge of the relevant facts to avoid surprise at trial," and granting plaintiff's motion for additional depositions).

## CONCLUSION

Plaintiff is not tilting at windmills in conducting discovery in this case. The targeted discovery conducted thus far has provided strong evidence for all of Plaintiff's claims against supervisory Defendants and officer Defendants alike. To permit Defendants to gain an advantage simply by prohibiting Plaintiff from deposing the IDOC employees they've chosen to speak on their behalf would inflict substantial and unwarranted prejudice on Plaintiff, and risk causing this case to be decided based on discovery limitations rather than its merits. As such, Plaintiff asks the Court to grant the requested relief.

WHEREFORE, Plaintiff respectfully asks the Court for permission to take the depositions of (1) Defendants Lisa Johnson and Felipe Zavala;  and (2) the following individuals identified on Defendants Rule 26(a)(1) disclosures: David Suttons Robert Allison, Leah Taylor, Karen Pfost, and Shelby Warner.  Plaintiff further asks the Court to strike from Defendants' 26(a)(1) disclosures or, in the alternative, to grant Plaintiff leave to take depositions of the following individuals: Ann Lahr, Katina Joiner, Michele L. White, Brittany L. Ott, Linda R. Ligon, Demian Harkins, Tiona M. Farrington, Eric Ganier, Adam Hergert, Ryan Nottingham, Jeffrey Milbauer, and Jeff Short.

Respectfully submitted,

/s/ Megan Pierce
Megan Pierce
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Julie Goodwin
Sarah Grady
Megan Pierce
Steve Weil

21

LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
sarah@loevy.com

## CERTIFICATE OF SERVICE

I, Megan Pierce, an attorney, hereby certify that on May 14, 2020, I caused the foregoing Plaintiff's Second Renewed Motion for Leave to Take Depositions Pursuant to Federal Rule of Civil Procedure 30(a)(2) to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

Respectfully submitted,

/s/ Megan Pierce
Megan Pierce
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION

I, Megan Pierce, an attorney, hereby certify that this motion contains 6,579 words and therefore complies with the type volume limitation of 7,000 words set in Local Rule 7.1(B)(4)(b).

Respectfully submitted,

/s/ Megan Pierce
Megan Pierce
Attorney for Plaintiff