**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **JACQUELINE FARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17-cv-3279** |
| | ) | |
| **ERIK KOHLRUS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on cross-motions for summary judgment.  See Def.'s Mot., d/e 213; Pl.'s Mot., d/e 223. Defendant Illinois Department of Corrections (IDOC) seeks summary judgment on Count VIII and Count IX of Plaintiff Jacqueline Farris's Second Amended Complaint, which comprise her claims under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.  Ms. Farris seeks summary judgment on those counts only as to liability.  With no material facts in dispute, the Court finds that IDOC's treatment of Ms. Farris violated both the ADA and the Rehabilitation Act.  Ms. Farris's motion is GRANTED, and IDOC's motion is DENIED.

# I. BACKGROUND

The Court draws the following facts from the parties' statements of undisputed facts and the evidence they submitted. The Court deems admitted those facts not in dispute and any facts disputed without an evidentiary basis.  See L.R. 7.1(D)(2)(b)(2).

On November 30, 2015, Plaintiff Jacqueline Farris pled guilty in Illinois state court to possessing between one and fifteen grams of cocaine, a Class 4 felony.  People v. Farris, No. 2015-CF-1602 (Cir. Ct. Champaign Cnty.).  The circuit court then sentenced Ms. Farris to six years in IDOC custody.  See Def.'s Mem. ex. B, d/e 214-2, at 2.  In issuing its "Impact Incarceration Sentencing Order," the circuit court found that Ms. Farris's offense "was committed as the result of the use of . . . or addiction to . . . a controlled substance."  Id.  The circuit court further found that Ms. Farris met "the eligibility requirements for possible placement in the Impact Incarceration Program."  Id.

The Impact Incarceration Program, or "boot camp," provides individuals under Illinois felony sentence with "an alternative to prison styled after the familiar military basic training program."  United States v. Gajdik, 292 F.3d 555, 556 (7th Cir. 2002).  An

offender who completes boot camp is entitled to a reduction in his sentence to time served.  730 ILCS 5/5–8–1.1(a).  If the offender "is not accepted for placement" or "does not successfully complete the program, his term of imprisonment shall be as set forth by the court in its sentencing order."  Id.

Participation in boot camp ordinarily follows from a sentencing judge's recommendation.  See id.; see also 20 Ill. Admin. Code § 460.20.  A judicial recommendation satisfies only one of eight statutory eligibility requirements, however, and the sentencing judge's word is neither sufficient nor necessary.  Cf. 730 ILCS 5/5–8–1.1(l) (enabling IDOC to "identify candidates for participation in the program that were not previously recommended and formally submit the names to" the committing state's attorney); see also Solorzano-Patlan v. INS, 207 F.3d 869, 871 n.4 (7th Cir. 2000) (noting that IDOC previously had rejected offenders recommended by sentencing judge).  To enroll, an offender also must:

1) Be between 17 and 35 years of age;
2) Never have participated in the program before or served more than one prior sentence of imprisonment for a felony offense;
3) Not have been convicted of certain serious felonies such as murder, rape, kidnapping, and arson;

4) Have been sentenced to a term of imprisonment of eight
   years or less;
5) Be physically able to participate in the program;
6) Not have any mental disorder or disability that would
   prevent participation; and
7) Consent in writing.

See 730 ILCS 5/5–8–1.1(b)(1–7).  But even if an offender satisfies all

these criteria, IDOC still "may consider, among other matters, . . .

whether [the offender's] participation in the impact program may

pose a risk to the safety or security of any person."  Id.  The

program's enabling statute therefore leaves to IDOC's discretion the

decision whether to admit a particular candidate.

IDOC has concluded that certain categories of offenders are

definitionally ineligible for boot camp.  This includes offenders who

require psychotropic medication for mental or emotional illness.

Before an offender may be admitted to boot camp, he must undergo

a mental-health evaluation "that focuses on 'current and previous

mental health issues that could compromise the offender's ability to

successfully complete the rigorous physical requirements or adhere

to strict disciplinary requirements of the program."  Def.'s Mem.,

d/e 214, at 5 ¶ 30.  If IDOC finds "no evidence of current mental

disorder that would compromise [an offender's] participation in the

program," IDOC categorizes the offender as "Priority #1," which means that the offender does "[n]ot have any mental disorder or disability that would prevent participation." Id. at 3 ¶ 12.  If the offender reports a "history" of psychological diagnoses or treatment, IDOC categorizes the offender as "Priority #2" and performs further screening to determine whether the "chronic or episodic mental health problem . . . may influence [the offender's] ability to complete the program." Id. ¶ 13.  And if the offender's "mental health needs require[] psychotropic medications," IDOC classifies the offender as "Priority #3" and deems him ineligible for boot camp. Id. at 5 ¶ 28. IDOC's internal directives and policies do not contemplate an exception to this rule.  Instead, IDOC expressly "prohibits . . . deeming a prisoner on psychotropic medication eligible for the Impact Incarceration Program." Id. at 6 ¶ 36.

Ms. Farris was admitted to the Logan Correctional Center for processing and placement on December 4, 2015.  When Ms. Farris began her sentence, she was 31 years old, a first-time felony offender, a first-time prisoner, and under a six-year sentence. Cf. 730 ILCS 5/5–8–1.1(b)(1–4).  Upon arrival, Ms. Farris received a grey uniform screen-printed with the words "boot camp."  She also

received a one-page memorandum that instructed her not to "loan [her] IIP [Impact Incarceration Program] clothing to other IIP inmate [sic]." See Pl.'s Mot. ex. 9, d/e 223-9, at 1. Ms. Farris then signed two forms: a release identifying her as "the undersigned participant in the Impact Incarceration Program," and another release bearing the title "Impact Incarceration Form Consent to Participate." Id. ex. 10, d/e 223-10, at 1–3; cf. 730 ILCS 5/5–8–1.1(b)(7) (requiring that boot-camp participants "consent in writing").

Ms. Farris underwent a first-level mental health screening later that day. The screening consisted of a brief interview with Amy Rude, a licensed clinical social worker employed by Wexford Health Services, IDOC's healthcare provider. Ms. Rude memorialized the screening by checking two boxes on Logan's "Mental Health Impact Incarceration" form. One check designated Ms. Farris as "Priority #1," indicating that Ms. Rude had found "no evidence of current mental disorder . . . that may compromise the offender's participation." See Pl.'s Mot. ex. 11, d/e 223-11, at 1. The other check affirmed that, "[b]ased on the medical screening above," Ms. Farris was "[a]pproved to participate in the Impact Incarceration program." Id.; cf. 730 ILCS 5/5–8–1.1(b)(6) (requiring

that boot-camp participants "not have any mental disorder or disability that would prevent participation").

Ms. Farris also underwent a medical screening.  Robert Allison, a Wexford physician's assistant, conducted Ms. Farris's examination.  Like Ms. Rude, Mr. Allison found that Ms. Farris satisfied IDOC's physical-health qualifications and was "[a]pproved to participate in the Impact Incarceration Program."  See Pl.'s Mot. ex. 13, d/e 223-13, at 1; see also 730 ILCS 5/5–8–1.1(b)(5) (requiring that boot-camp participants "be physically able to participate in physical activities").

On December 21, 2015, Logan submitted Ms. Farris's "Offender Classification Form" to IDOC's transfer coordinator.  See Pl.'s Mot. ex. 14, d/e 223-14, at 1.  The form indicated that Logan's superintendent had approved Ms. Farris for admission to boot camp.  Id. at 4.  At Logan's recommendation, Ms. Farris was to be placed at "VIENNA: DIXON SPRINGS BOOT."  Id.  As of December 27, 2015, Ms. Farris remained approved and eligible for boot camp. See Def.'s Resp. to Pl.'s Second Interrogs., d/e 223-15, at ¶ 2.

On December 28, 2015, Ms. Farris told a mental-health staffer that a correctional officer, Defendant Erik Kohlrus, had engaged in

several sex acts with her earlier that day. The parties agree that Ms. Farris and Officer Kohlrus had sex and that Ms. Farris promptly reported it. They dispute only whether the sex was consensual. But see 720 ILCS 5/11-9.2(e) ("A person is deemed incapable of consent, for purposes of this Section, when he or she is a probationer, parolee, releasee, inmate in custody of a penal system or person detained or civilly committed under the Sexually Violent Persons Commitment Act, or a person in the custody of a law enforcement agency or employee."). Ms. Farris reported feeling "anxious" and asked to speak with a psychiatrist. Ms. Farris also told the staffer that she previously had "minimized" her history of psychiatric treatment "because of rumors she'd heard about the advisability of denying symptoms to get cleared for boot camp." Def.'s Mem., d/e 214, at 4 ¶ 17. Ms. Farris was assigned to Logan's health-care unit pending a psychiatric evaluation.

On December 31, 2015, Ms. Farris was evaluated by Dr. Jose Mathews, a Wexford psychiatrist. According to Dr. Mathews, Ms. Farris reported that she had been diagnosed with and treated for an anxiety disorder before her incarceration. Dr. Mathews noted that Ms. Farris previously had been prescribed at least fifteen different

psychotropic medications, including the antidepressants Prozac and Wellbutrin and the anti-anxiety medications Ativan and Xanax.  Dr. Mathews diagnosed Ms. Farris with generalized anxiety disorder and prescribed Ms. Farris low doses of three psychotropic medications: the sleeping aid trazadone and the anti-anxiety medications hydroxyzine and buspirone.  Dr. Mathews "had heard of the Impact Incarceration Program, but was not aware that Plaintiff might be ineligible if she took the psychotropic medications."  Id. at 9 ¶ 61.  Dr. Mathews later opined that Ms. Farris's medication regimen would not have impeded her full participation in boot camp.  See Pl.'s Mot., d/e 223, at 8 ¶ 27.

On January 5, 2016, Ms. Rude completed a second "Mental Health Impact Incarceration" form on behalf of Ms. Farris.  The form classified Ms. Farris "as a Priority #3, deemed ineligible to participate in the Impact Incarceration Program because her mental health needs required psychotropic medications."  Def.'s Mem., d/e 214, at 5 ¶ 28.  As a result, Ms. Farris automatically was "denied acceptance to the Impact Incarceration program because of her prescription for psychotropic medications."  Id. at 7 ¶ 28.  Logan

transferred Ms. Farris to the Decatur Correctional Center two weeks later.  Ms. Farris was released from custody in September 2018.

After completing her sentence, Ms. Farris brought this suit pursuant to 42 U.S.C. § 1983.  In addition to her claims against a dozen or so individual IDOC employees, Ms. Farris contends that, by promulgating and enforcing a discriminatory boot-camp selection policy, IDOC itself violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.  See Second Am. Compl., d/e 170, at 20–21.

## II. JURISDICTION AND VENUE

Ms. Farris brought this civil rights action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12132 et seq., and 29 U.S.C. § 794 et seq.  This Court, therefore, has federal-question jurisdiction over her claims.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Venue is proper because a substantial part of the events or omissions giving rise to Ms. Farris's claims occurred within this District.  See 28 U.S.C. § 1391(b).

### III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).

In ruling on a motion for summary judgment, the Court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).  Similarly, in ruling on cross-motions for summary judgment, the Court views "all facts and inferences in the light most favorable to the nonmoving party on each motion."  Lalowski v. City of Des Plaines, 789 F.3d 784, 787 (7th Cir. 2015).

## IV. DISCUSSION

Ms. Farris sues IDOC under two interrelated federal statutes: Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et seq., and Section 504 of the Rehabilitation Act, 42 U.S.C. § 794a et seq.  Both statutes prohibit public entities "from discriminating against a qualified individual with a disability on account of that disability."  Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 206 (1998) (cleaned up).  The "relief available" to plaintiffs "under these provisions is coextensive."  Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 672 (7th Cir. 2012) (noting that both statutes incorporate 42 U.S.C. § 200e–5 as source of private right of action).  The only distinction is that the Rehabilitation Act "includes as an additional element the receipt of federal funds, which all states accept for their prisons."  Id. at 671 (collecting cases).

Since the ADA and Rehabilitation Act standards are "functionally identical," Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015), and since a plaintiff "may have but one recovery," Jaros, 684 F.3d at 672, the Court will refer to and analyze Ms. Farris's claims collectively.  See generally Garfield v. Cook Cnty.,

Ill., 2009 WL 4015553, at *2 (N.D. Ill. Nov. 19, 2009) ("[C]ourts

generally analyze claims brought under the two statutes similarly.").

## A. Ms. Farris's Claims Are Not Barred by Sovereign Immunity.

The Court first addresses a threshold question raised by

IDOC's motion for summary judgment.  Specifically, IDOC contends

that the "Eleventh Amendment and case law clearly shields IDOC

from suit for monetary damages."  Def.'s Mem., d/e 214, at 22.

A federal civil suit against a state is barred by the Eleventh

Amendment unless the state has waived its right of sovereign

immunity.  Power v. Summers, 226 F.3d 815, 818 (7th Cir. 2000).

That exception applies here.  Illinois long ago "waived its immunity

from suits for damages under the Rehabilitation Act as a condition

of its receipt of federal funds."  Jaros, 684 F.3d at 672 n.5 (citing

Stanley v. Litscher, 213 F.3d 340, 344 (7th Cir. 2000)).  The

Eleventh Amendment's grant of state sovereign immunity, therefore,

does not bar Ms. Farris's claims against IDOC.

## B. Ms. Farris' Motion for Partial Summary Judgment is Granted.

Ms. Farris's claims come under Title II of the ADA and Section

504 of the Rehabilitation Act, which prohibit discrimination by

public entities on the basis of disability.  Title II provides, in
relevant part, that "no qualified individual with a disability shall, by
reason of such disability, be excluded from participation in or be
denied the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by any such entity."
42 U.S.C. § 12132.  Similarly, Section 504 provides that "[n]o
otherwise qualified individual with a disability . . . shall, solely by
reason of her or his disability, be excluded from the participation in,
be denied the benefits of, or be subjected to discrimination under
any program or activity receiving Federal financial assistance."  29
U.S.C. § 794(a).  A public entity includes "any department, agency,
special purpose district, or other instrumentality of a State or
States or local government."  42 U.S.C. § 12131(1)(B).  This
definition "unmistakably includes State prisons and prisoners."  Pa.
Dep't of Corr. v. Yeskey, 524 U.S. 206, 209 (1998).

    Ms. Farris contends that by denying her access to boot camp
by reason of her supervised use of psychotropic medication, IDOC
violated the ADA.  To prevail on her claims, Ms. Farris must prove
that she "(1) is a qualified person (2) with a disability and (3) the
Department of Corrections denied [her] access to a program or

activity because of [her] disability." <u>Jaros</u>, 684 F.3d at 672. IDOC argues that Ms. Farris cannot satisfy any of these elements as a matter of law. Conversely, Ms. Farris argues that IDOC's "no-psychotropics" rule—and, therefore, the decision to exclude her from boot camp—were discriminatory per se.

### 1. IDOC's no-psychotropics rule violated the ADA per se.

Ms. Farris argues that IDOC's no-psychotropics rule "is a textbook example of 'per se' disability discrimination." Pl.'s Mot., d/e 223, at 14. Under her interpretation of the ADA case law, per se disability discrimination occurs when "a covered entity prevents a person from participating in a program, service, or activity that disavows any individualized assessment of the person's actual abilities, and instead imposes a blanket policy that precludes such an assessment." <u>Id.</u> IDOC disputes both Ms. Farris's reading of the ADA and her contention that IDOC's no-psychotropics rule was anything other than a permissible "objective criter[ion]." <u>See</u> Def.'s Resp., d/e 228, at 17.

There is no meaningful disagreement as to the import of IDOC's no-psychotropics rule. Any IDOC prisoner with any mental illness, regardless of severity, who requires any psychotropic

medication, regardless of dosage or effect, is categorically ineligible for boot camp.  This rule violates the ADA.

The ADA imposes on public entities a "basic requirement that the need of a disabled person be evaluated on an individual basis." PGA Tour, Inc. v. Martin, 532 U.S. 661, 690 (2001); see also Steffen v. Donahoe, 680 F.3d 738, 742 n.2 (7th Cir. 2012) (observing that an "individualized evaluation is required by the ADA").  A policy that "prevents individual assessment," and so "necessarily operates to exclude disabled people that are qualified" to participate, "constitutes a per se violation."  Steffen, 680 F.3d at 748.

The ADA forbids policies under which an individual's eligibility rises or falls with his disability.  Accordingly, "blanket exclusions are to be given the utmost scrutiny, and are, as a general rule, to be discouraged."  Bombrys v. City of Toledo, 849 F.Supp. 1210, 1219– 20 (N.D. Ohio 1993) (finding blanket exclusion of insulin-dependent diabetics from police force violated ADA); see also Gaus v. Norfolk Southern Ry. Co., 2011 WL 4527359, at *29 (W.D. Pa. Sept. 28, 2011) (finding "blanket ban from working in safety-sensitive and nonsedentary positions, on all employees who are taking certain narcotic medications, [to be] contrary to the ADA's requirement that

assessments be made on an individualized basis"); <u>Stillwell v.</u>

<u>Kansas City, Mo. Bd. of Police Comm'rs</u>, 872 F.Supp. 682, 686–87

(W.D. Mo. 1995) (finding across-the-board exclusion of all one-

handed applicants for private security licensure "r[an] afoul" of the

individualized-assessment requirement).  This theme repeats in the

implementing regulations promulgated by the Department of

Justice (DOJ).  They provide, in relevant part, that:

> [a] public entity shall not impose or apply
> eligibility criteria that screen out or tend to
> screen out an individual with a disability or any
> class of individuals with disabilities from fully
> and equally enjoying any service, program, or
> activity, unless such criteria can be shown to be
> necessary for the provision of the service,
> program, or activity being offered.

28 C.F.R. § 35.130(b)(8).

The undisputed record establishes that IDOC's rule is a

blanket ban.  As IDOC admits, its eligibility policies "require that

the Mental Health Professional check a box deeming the prisoner

ineligible for the Impact Incarceration Program if the prisoner

requires psychotropic medications."  Def.'s Mem., d/e 214, at 6 ¶

36.  Moreover, in IDOC's own words, departmental policy "prohibits

a Mental Health Professional from deeming a prisoner on

psychotropic medication eligible for the Impact Incarceration Program."  Id. ¶ 37.  These policies forbid individualized consideration, leaving no room for consideration of an applicant's "personal circumstances."  See PGA Tour, 532 U.S. at 688.  Title II demands otherwise.

IDOC's no-psychotropics rule also violates the ADA's prohibition on "screen-out" tests.  See 28 C.F.R. § 35.130(b)(8).  The rule applies only to prisoners who take psychotropic medications. Logically, then, the rule applies only to prisoners with mental disabilities, for only they would require treatment with psychotropic medications.  The rule therefore "screens out" prisoners with mental disabilities by targeting their treatment methods rather than their underlying conditions.  That is impermissible under the ADA.  See, e.g., Krocka v. Bransfield, 969 F.Supp. 1073 (N.D. Ill. 1997), aff'd on other grounds, Krocka v. City of Chicago, 203 F.3d 507 (7th Cir. 2000) (finding that police department policy of "placing all officers taking Prozac into a disciplinary program" violated the ADA).

IDOC argues that Title II imposes no such demands.  By IDOC's reading, PGA Tour and its individualized-inquiry requirement apply only to claims brought under Title III.  But

"Congress clearly did not intend to give public entities more latitude than private parties to discriminate against the disabled."  <u>Theriault v. Flynn</u>, 162 F.3d 46, 53 n.10 (1st Cir. 1998).  In fact, the enacting House Committee on Education and Labor expressly intended that Title II's prohibitions and protections would be "identical to those set out in the applicable provisions of titles I and III." H.R.Rep. No. 101–485(II), at 84 (1990), <u>reprinted in</u> 1990 U.S.C.C.A.N. 303, 367. IDOC's attempt to evade this "basic requirement," <u>PGA Tour</u>, 532 U.S. at 690, is unavailing.

IDOC also contends that its blanket policy is justified by an overriding concern for institutional safety.  <u>See</u> Def.'s Mem., d/e 214, at 21.  To be sure, prisons receive "substantial discretion to devise reasonable solutions to the problems they face, particularly when safety and security interests are at stake." <u>Mays v. Dart</u>, 974 F.3d 810, 820 (7th Cir. 2020) (cleaned up); <u>see also</u> <u>Love v. Westville Corr. Ctr.</u>, 103 F.3d 558, 561 (7th Cir. 1996) ("Security concerns, safety concerns, and administrative exigencies would all be important considerations to take into account.").  Federal regulations likewise leave IDOC free to impose "legitimate safety requirements necessary for the safe operation of its services,

programs, or activities" without violating the ADA.  28 C.F.R. §

35.130(h).  Yet IDOC still must base such requirements "on actual

risks," not "mere speculation, stereotypes, or generalizations about

individuals with disabilities."  Id.

    IDOC offers no evidence to suggest that its categorical rule is

"based on actual risks."  Doug Stephens—whom IDOC authorized,

pursuant to Federal Rule of Civil Procedure 30(b)(6), to speak on the

department's behalf—testified that he was "not aware" of any

evidence for IDOC's proffered rationale.  See Pl.'s Mot. ex. B, d/e

223-2, at 47:24–48:7 ("Q: 'The IDOC has no evidence that all

psychotropic medications regardless of dosage, underlying mental

health condition, or anything else renders the person taking them

inappropriate—unable to perform satisfactorily in a boot camp

setting, correct?' . . . A: 'I'm not aware of any of that, no.'").  Instead,

in the absence of objective, factual support, IDOC relies on rote

invocations of "safety and security."  For instance, IDOC claims that

it "has made the determination that an inmate is deemed ineligible

for the Impact Incarceration Program if she requires psychotropic

medications."  Def.'s Resp., d/e 228, at 18.  But whether IDOC has

made such a determination is irrelevant to whether that policy is

lawful.  Cf. Pandazides v. Virginia Bd. of Educ., 946 F.2d 345, 349

(4th Cir. 1991) (finding, in an ADA action, that state's tautological

claims of necessity were not evidence of necessity).  Similarly, IDOC

claims that its rule is "legitimately related to the Department's need

to preserve good order and discipline."  Def.'s Resp., d/e 228, at 18.

But a bare assertion of relevance does not suffice under the ADA.

    In sum, IDOC categorically excludes from boot camp all

prisoners whose mental disabilities require psychotropic medication

and permits no consideration or accommodation of a prisoner's

particular circumstances.  This rule violates the ADA per se.

### 2. Ms. Farris was a "disabled person."

    Still, for Ms. Farris to survive IDOC's motion for summary

judgment or prevail on her own, establishing that IDOC's policy

violated the ADA per se is not enough.  "In order to have standing to

sue . . . for a per se violation of the ADA or Rehab Act, one still has

to meet the definition of 'disabled person' under those statutes."

Steffen, 680 F.3d at 748.  So the next question is whether Ms.

Farris had or was "regarded as having" a "disability," as those terms

are defined by the ADA.  See Jaros, 684 F.3d at 672 (citing 42

U.S.C. § 12102[1]).  IDOC argues that because Ms. Farris "was not

substantially limited by her mental health conditions," she cannot
satisfy this requirement.  See Def.'s Mem., d/e 214, at 20.  In
response, Ms. Farris contends that by classifying her based on her
treatment of a mental-health condition, IDOC "regarded [her] as
having a mental or psychological disorder that impaired her
functioning," regardless of the actual degree of impairment.  See
Pl.'s Mot., d/e 223, at 16.

Under the ADA, a disability is a "(A) a physical or mental
impairment that substantially limits one or more major life
activities of [an] individual; (B) a record of such an impairment; or
(C) being regarded as having such an impairment."  42 U.S.C. §
12102(1).  Ms. Farris's claims focus on the third prong.  In her view,
the undisputed facts establish that IDOC "believed—correctly or
incorrectly—that [Ms. Farris] has a qualifying physical or mental
impairment and subjected [her] to adverse action based on that
belief."  Pl.'s Mot., d/e 223, at 14 (citing Miller v. Ill. Dep't of
Transp., 643 F.3d 190, 195 (7th Cir. 2011).

There is no dispute that IDOC believed that Ms. Farris had
"mental health needs . . . requiring any psychotropic medication."
Def.'s Mem., d/e 214, at 4 ¶ 17.  There is no dispute, either, that

IDOC excluded Ms. Farris from boot camp <u>because</u> she had "mental health needs . . . requiring any psychotropic medication." <u>See</u> Def.'s Resp., d/e 228, at 18 ("[A]n inmate is deemed ineligible for the Impact Incarceration Program if she requires psychotropic medications."); <u>see also</u> <u>Miller</u>, 643 F.3d at 195. IDOC regarded Ms. Farris's mental-health needs as disqualifying, and so IDOC regarded Ms. Farris as disabled. No reasonable factfinder could find otherwise.

IDOC, however, never addresses Ms. Farris's regarded-as claim on the merits. Rather, IDOC maintains that "there is no evidence Plaintiff was 'substantially impaired'" by her condition. Def.'s Mem., d/e 214, at 19. This argument relies on <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471 (1999), in which the Supreme Court first addressed the regarded-as prong. As the <u>Sutton</u> Court read it, the ADA required a "regarded-as" claimant to prove that a discriminatory act "was based on a physical or mental impairment, real or imagined," which the actor "regarded as <u>substantially limiting</u> a major life activity." <u>Id.</u> at 490 (emphasis added).

IDOC's reliance is misplaced. In 2008, "Congress amended the ADA to make clear an individual can be 'regarded as' having an

impairment 'whether or not the impairment limits or is perceived to limit a major life activity.'" Richardson v. Chicago Transit Auth., 926 F.3d 881, 888 (7th Cir. 2019) (quoting 42 U.S.C. § 12102(3)(A)); see generally ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553 (2009) (amending 42 U.S.C. § 12101 et seq.). The amended ADA therefore "reject[s] the Supreme Court's reasoning" in Sutton. Id. at § 2(b)(3). "Whether an individual's impairment 'substantially limits' a major life activity" is now irrelevant "to coverage under . . . the 'regarded as' prong." See 29 C.F.R. § 1630.2(j)(2). Instead, the amended ADA requires that courts take a "broad view of the third prong of the definition of handicap." See id. at § 2(b)(3) (citing School Bd. of Nassau Cnty. v. Arline, 480 U.S. 273 (1987)).

As the parties agree, IDOC conditioned Ms. Farris's participation in a state-run program on the way she treated a diagnosed mental illness. The Court, therefore, finds that IDOC regarded Ms. Farris as disabled as a matter of law. And by satisfying both elements of her per se discrimination claim, Ms. Farris has established IDOC's ADA and Rehabilitation Act liability. She is entitled to partial summary judgment on Counts VIII and IX.

**C. Ms. Farris's Damages Claims Will Proceed to Trial.**

The question remains whether IDOC owes Ms. Farris compensatory damages.  To answer that question, a factfinder must determine whether IDOC discriminated intentionally or else with "deliberate indifference."  See, e.g., Lacy v. Cook Cnty., Ill., 897 F.3d 847, 863 (7th Cir. 2018).  In the interest of judicial economy, the Court shall enter a scheduling order and set Ms. Farris's damages claims for trial after the parties' remaining summary judgment motions have been resolved.

## VI. CONCLUSION

For these reasons, Plaintiff Jacqueline Farris's Motion for Partial Summary Judgment, see d/e 223, is GRANTED.  Defendant IDOC's Motion for Summary Judgment, see d/e 213, is DENIED.  Judgment shall enter in favor of Plaintiff on Counts VIII and IX as to Defendant's liability.

**IT IS SO ORDERED.**

**ENTERED:  FEBRUARY 13, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**